**In the Matter of the WELFARE of Lori Marie GILLISPIE and James Allen Gillispie.**

No. 50232.

Supreme Court of Minnesota.

Sept. 5, 1980.

tion of parental rights was filed. The trial court ordered Bruce's parental rights terminated, finding that the respondent father, by his actions, had abandoned the children. We vacate the termination order.

Bruce Gillispie and Lynn Gillispie Bulena were married in 1971 when Bruce was 17 and Lynn was 16. Lynn was pregnant at the time of the marriage. Bruce's parents objected to the marriage, but Lynn's mother supported the young people and they moved into her home. During the marriage, Bruce was not regularly employed and did not readily accept his adult responsibilities. Lynn became pregnant again, but the parties separated prior to the birth of their second child.

Lynn commenced a divorce action which Bruce originally contested. At about the time set for the hearing, however, Bruce joined the Marines and withdrew his defense of the divorce action. No stipulation was obtained. On February 20, 1974, a default decree was entered which dissolved the marriage, gave custody of the children to Lynn, denied Bruce visitation rights, and ordered Bruce to pay $25 per week for child support. Lynn's mother testified that she mailed a copy of the decree to Bruce's commanding officer. Although Bruce acknowledged that he knew of the divorce, he testified that he did not receive a copy of the decree while in the Marines and did not actually see the decree until 1976.

In 1974 Lynn married James Bulena. The children have been raised by their mother and stepfather, unaware that Bruce is their natural father, and apparently regarded James Bulena as their natural father. The evidence discloses that since Lynn's marriage, Lynn and her mother have undertaken all available means to discourage and prevent Bruce from seeing, visiting, and providing for his children. Lynn has refused to have any contact with Bruce and his family. Lynn's mother has refused to forward messages from Bruce to Lynn, has returned Christmas cards sent from Bruce to the children, and has written

O'Connell & O'Connell, Charles O'Connell, and Thomas R. O'Connell, John P. Alexis, St. Paul, for appellant.

Raymond W. Faricy, Jr., St. Paul, for respondent.

Heard before OTIS, TODD, and YETKA, JJ., and considered and decided by the court en banc.

TODD, Justice.

Bruce Gillispie, the natural father of Lori Marie and James Allen Gillispie, refused to consent to the adoption of his children by their stepfather. A petition for termina-

to Bruce asking him to leave the children alone.

During his separation from Lynn, Bruce sporadically visited the children, but conflicts arose between Bruce and Lynn during these visitations. Bruce has not visited the children since the divorce, although he has occasionally driven through the children's neighborhood in order to see them. Bruce testified that he sent some money to the children but that it had been returned as had the Christmas cards. Bruce also testified that he refused to consent to the adoption because "all these years I have been trying to see them [the children] I wouldn't let people adopt them. I love them, I wanted to see them."

In October or November of 1978, Bruce received a bill from the Ramsey County Welfare Department for $5,085 for past due child support. He was unemployed at that time and appeared without counsel at the court hearing about the bill. Bruce agreed to commence some payments. Bruce also questioned his lack of visitation rights at the hearing but nothing was accomplished. Bruce has taken no other action to have his visitation rights changed. On December 1, 1978, Bruce paid $20 to the welfare department. On March 5, 1979, Bruce began working for Burlington Northern. On March 21, Bruce paid $100 to the welfare department.

Bruce has remarried and has one child by his present wife. The record discloses that Bruce's present wife previously had custody of her child by a former marriage but that custody has been returned to her ex–husband. There is no evidence as to the reasons for the change in custody.

The children were represented in the proceedings by a court–appointed guardian. The guardian has not spoken to the children about this case because he does not wish to be the first to tell them that Bruce is their natural father. The guardian, however, has opposed the termination order because he believes Bruce was denied an opportunity to see the children and because he believes Bruce is older, more mature, and may be able to contribute to the children's growth in a positive way.

At the conclusion of the testimony, the trial court ruled from the bench that the termination petition would be granted and directed petitioner's counsel to prepare an order. An order was prepared and signed by the judge. There is no accompanying memorandum. The order provides in part:

### IV

That the respondent father, by his actions has abandoned the children.

### V

That the respondent father, Bruce Wayne Gillispie has substantially and continually failed to give the minor children the necessary parental care and protection.

### VI

That the respondent father, although financially able, has continuously neglected to provide the children with necessary subsistance, education and other care necessary for the children's physical and mental health and morals.

From the foregoing, the Court makes the following as:

### CONCLUSIONS

1. Pursuant to Minn.Stat. § 260.-221(b)(1), (2) and (3),[1] Bruce Wayne Gillispie's parental rights to the minor chil-

---

1. Minn.Stat. § 260.221(b)(1), (2), (3) (1978) provides that the juvenile court may terminate parental rights:
   * * * *

(b) If it finds that one or more of the following conditions exist:
(1) That the parents have abandoned the child; or

dren, Lori Marie Gillispie, born May 1, 1972 and James Allen Gillispie, born March 16, 1973 are hereby terminated.

There is no finding that Bruce is presently unfit to exercise his parental rights.

The issue presented is whether the termination order is sustainable by clear and convincing evidence as required by *Matter of the Welfare of Rosenbloom*, 266 N.W.2d 888 (Minn.1978). We find that it is not.

█ We have said, as recently as *Matter of Welfare of Solomon*, 291 N.W.2d 364, 367 (Minn.1980), that "parental rights may not be terminated unless the petitioner can show sufficient evidence that a specific statutory ground for termination exists." The trial court in the instant case found the specific statutory ground of abandonment. The record does not clearly and convincingly support such a finding.

█ Although there is evidence that Bruce has failed to live up to his parental responsibilities in the past, there is considerable evidence that he is now ready to assume those responsibilities. In the past, Bruce was immature, irregularly employed, and remiss in paying support to the welfare department. Furthermore, the genuine efforts he did make to assume his parental responsibilities were thwarted by Lynn and her mother. Presently, Bruce has displayed maturity, has shown the ability to retain regular employment, and has begun paying support money to the welfare department. He is ready to assume his parental responsibilities and should not be prevented from doing so. *Petition of Linehan*, 280 N.W.2d 29 (Minn.1979). Here, as in *Linehan*, the father is not seeking custody of his children nor any disruption of the present relationship between the children and the household in which they live but only the opportunity to assume the role of a parent.

(2) That the parents have substantially and continuously or repeatedly refused to give the child necessary parental care and protection; or

(3) That, although the parents are financially able, they have substantially and continuously

The order terminating Bruce Gillispie's parental rights is vacated.

AMDAHL, J., not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.

neglected to provide the child with necessary subsistence, education, or other care necessary for his physical or mental health or morals or have neglected to pay for such subsistence, education or other care when legal custody is lodged with others; * * *.