In the Matter of the WELFARE OF
L.L.N. and B.W.N.

No. C0–85–194.

Court of Appeals of Minnesota.

Aug. 6, 1985.

Stephen D. Gabrielson, Fairmont, for Father, W.N.

Jeffrey D. Bangma, Mora, for L.L.N. Guardian Ad Litem.

Steven P. Ruble, Milaca, for L.N.

Heard, considered and decided by FORSBERG, P.J., and WOZNIAK and SEDGWICK, JJ.

## OPINION

WOZNIAK, Judge.

W.N. appeals from an order terminating his parental rights to his fourteen-year old son, L.L.N. The trial court found that three of the statutory grounds for termination were met: that father had abandoned son, that he had neglected to comply with the duties of parenting, and that he had failed to contribute support without good cause. We reverse.

## FACTS

Father and mother were married for seven years and lived in the town of Ceylon in Martin County, Minnesota. After the dissolution of their marriage in 1977, custody of their two children (L.L.N., fourteen; B.W.N., nine) was granted to mother. Fa-

ther was required to pay child support of $150 per month until the children reached the age of eighteen. From 1978 through 1980, father paid $1,350 of the $3,600 he owed for child support. He was granted reasonable visitation which he exercised on a monthly basis until 1980.

During the parties' marriage, father owned and operated a body shop. The business failed in 1977. Ever since 1977, father has worked in a family-owned agricultural business. He earns approximately $1,300 per month. He is also receiving $160 per month in payments from the sale of land.

Mother remarried in 1980 to T.N. and moved with the children to Ogilvie, Minnesota, which is 215 miles from Ceylon. Father never visited the children in Ogilvie. In 1980 he asked them to accompany him to Disneyland. The children declined. Father did see the children, however, when mother brought them to Martin County for Easter in 1981 and for her mother's funeral in 1984.

In May 1984, father called and asked L.L.N. to come to his wedding that month. L.L.N. refused. That same month, he sent a cashier's check for $2000 to mother for back child support.

Mother's mother called and alerted father whenever the children visited her in Ceylon so that he could come to see them. Father and his new wife testified that they went to grandmother's home on two occasions since 1980 to visit the children. Both times, the children were gone by the time father arrived. Mother testified that she did not approve of her mother "going behind her back."

Father sent Christmas presents to the boys through grandmother. He sent L.L.N. a $20.00 check in 1983 for his birthday. L.L.N. wrote several letters to father, who responded to a couple of them. L.L.N. testified that father may have called him a few times and may have written to him once or twice between 1981 and 1984.

In 1984, mother petitioned the court to terminate father's parental rights to both

children. The trial court terminated father's parental rights to L.L.N., but not to B.W.N. The court found that while father had abandoned both children, it was not in B.W.N.'s best interest to terminate father's parental rights.

Father testified that he loved his sons very much and plans to foster a better father-son relationship. He believes mother frustrated many of his attempts to visit the boys. He attributes his sporadic child support payments to his being low on funds due to the failed business.

At trial, L.L.N. testified that he wanted his father's parental rights terminated, and that he wanted to be adopted by T.N. L.L.N. uses T.N.'s last name at school. T.N. testified that he will adopt L.L.N. as soon as this termination matter is settled.

It appears that the trial court relied heavily on L.L.N.'s testimony in arriving at its decision:

> In the sociological and practical sense parental rights have already been terminated with respect to [L.L.N.] * * *. To deny termination would be to frustrate an intelligent young man who has integrated himself into a loving family and wants the law to confirm his true relationship.

## ISSUE

Did the trial court err in terminating W.N.'s parental rights to his fourteen-year old son L.L.N.?

## ANALYSIS

■ The Minnesota Supreme Court has adopted stringent standards for reviewing orders for termination of parental rights. *In Re Welfare of J.W.M.,* 290 N.W.2d 770 (Minn.1980). The burden of proof is on the petitioner and there is a presumption that a parent is a fit and suitable person to be entrusted with the care of a child. *In Re Dependency of Klugman,* 256 Minn. 113, 97 N.W.2d 425 (1959). Termination orders must be supported by clear, specific findings which conform to the statutory requirements. *In Re Wel-*

*fare of Chosa,* 290 N.W.2d 766 (Minn.1980). Termination should be affirmed only when the evidence clearly mandates such a result. *See In Re Welfare of Kidd,* 261 N.W.2d 833 (Minn.1978).

Minn.Stat. § 260.221 (1984) allows termination of parental rights for any one of a number of grounds. The trial court terminated W.N.'s parental rights on three of these statutory grounds. They are:

> That the parent has abandoned the child;
>
> That the parent has substantially, continuously, or repeatedly refused or neglected to comply with the duties imposed upon that parent by the parent and child relationship * * *;
>
> That a parent has been ordered to contribute to the support of the child or financially aid in the child's birth and has continuously failed to do so without good cause.

Minn.Stat. § 260.221(b)(1), (b)(2), (b)(3) (1984).

The court need find that only one of the statutory conditions exists to terminate parental rights. *See* Minn.Stat. § 260.221(b) (1984).

■ Here, there is insufficient evidence to sustain the trial court's finding on each, or any, of these separate grounds. The evidence does not "clearly mandate" that W.N.'s parental rights to his son L.L.N. be terminated.

The facts the trial court relied upon as sufficient to support each of the three statutory grounds are as follows:

> Over the past four years the father has not responded to letters and telephone calls from the children, he has not made serious attempts to visit the children, and has not attempted to support them.
>
> Here the father was clearly able to provide financial assistance and a nurturing relationship with his children and yet neglected to do so.

Infrequent visitation and sporadic child support payments are insufficient reasons to terminate parental rights. The Minnesota Supreme Court has determined that sporadic visitation by itself will not support

termination of a parent's rights; rather, a court must look to whether this inability to care properly for the child will continue indefinitely. *In re Linehan,* 280 N.W.2d 29 (Minn.1979); *In re Gillispie,* 296 N.W.2d 878 (Minn.1980). The issue must be whether a parent is "presently able and willing to assume his responsibilities and not whether he has from time to time in the past been derelict in his duties." *Linehan,* 280 N.W.2d at 31.

In *Linehan,* the father had not visited or made any significant child support payments for over five years. The court found that his reasons for the lapses were "persuasively presented" (unemployed; engaged to a woman with Hodgkins disease). Although the court found his behavior reprehensible, it did not terminate his rights because "He is anxious only to resume visitation rights and assume the role of a parent. He should be given that opportunity." *Linehan,* 280 N.W.2d at 33.

In *Gillispie,* the father had not visited for over five years. In fact, the child did not even know who his real father was. Yet, the court refused to terminate the father's rights, holding: "Although there is evidence that Bruce has failed to live up to his parental responsibilities in the past, there is considerable evidence that he is now ready to assume those responsibilities." *Gillispie,* 296 N.W.2d at 881.

Significantly, in *Linehan* and *Gillispie,* as here, the child's stepfather was ready to adopt the child. Both courts held, however, that:

> As between the natural father and a stepfather seeking adoption, the test in determining whether or not parental rights should be terminated * * * is the present ability of the natural parent to develop a relationship beneficial to the child, and not merely whether it is in the child's best interests to terminate those rights.

*Linehan,* 280 N.W.2d at 29; *see Gillispie,* 296 N.W.2d at 881.

Mother attempts to distinguish *Linehan* and *Gillispie,* arguing that those courts decided as they did because the mothers in those cases frustrated the fathers' attempted visits, and she did not similarly interfere in the present case. Her argument is without merit because, while it is true that the mothers did attempt to frustrate the fathers' visits, the courts did not base their decisions on this fact. The decisions are based on the fact that the fathers were, at the time of termination, presently able to carry out their fatherly duties. Additionally, we are not convinced that mother did *not* frustrate W.N.'s attempts to visit L.L.N. and B.N.

Here, it appears from the record that father is presently able to carry out his fatherly duties. And, although the court did not make a specific finding, we believe it reached this conclusion.

We note that the court found that father had abandoned both L.L.N. and B.W.N., yet it only terminated father's rights to L.L.N. The court found "If the father will attempt to establish a relationship with this child [B.W.N.] in the future, the child will respond and it may be possible to establish a meaningful parent child relationship." Implied in this finding is the fact that father is presently able to carry out his fatherly duties, regardless of how he behaved in the past. Therefore, the trial court erred in terminating his parental rights to L.L.N.

## DECISION

The facts do not "clearly mandate" that father's parental rights be terminated. If they did, the trial court would certainly have terminated his rights to B.W.N. as well. The supreme court has repeatedly said that the reasons to terminate parental rights must be "grave and weighty." Sporadic visitation and sporadic child support payments over a four-year period are not such "grave and weighty" reasons.

Reversed.