In the Matter of the WELFARE OF D.D.K., Child.

Nos. C9–85–372, C4–85–389.

Court of Appeals of Minnesota.

Nov. 12, 1985.

Steve L. Bergeson, Minneapolis, for appellant Mother.

Craig D. Larson, Champlin, for appellant Father.

Robert M.A. Johnson, Anoka Co. Atty., Marcy S. Crain, Asst. Co. Atty., Anoka, for respondent Anoka County Community Health and Social Services.

Sharon Hall, Michael F. Hurley, Columbia Heights, for Child.

Heard, considered and decided by FORSBERG, P.J., and PARKER and FOLEY, JJ.

## OPINION

FORSBERG, Judge.

This is a consolidated appeal from an order terminating the parental rights of both parents of D.D.K., following a consolidated hearing. We affirm in both cases.

## FACTS

D.D.K. was born on August 16, 1979, to J.K. and M.K., who separated when she was about one year old. The mother, J.K., then had custody of her, along with her son, W.S., whose custody she has retained.

In April, 1981, the mother entered a women's shelter, Alexandra House, due to an abusive situation with her boyfriend. While at Alexandra House, she took D.D.K. to Unity Hospital with a fever. At the hospital, two skull fractures, as well as various bruises and a black eye, were noted. The mother denied that her boyfriend had abused the child and gave various explanations for the injuries.

The child was held at the hospital, and a neglect petition was filed. On May 15,

1981, the petition was amended to allege dependency, and following an adjudicatory hearing and an admission of the facts, the child was found to be dependent. The mother appeared at the hearing and was represented by court-appointed counsel. The father appeared but was not represented by counsel.

The child was ordered placed in foster care, with legal custody in Anoka County Social Services, for a period of one year. A social service plan for the parents was presented, which required the mother to do the following:

1. [Mother] will have a psychological evaluation.

2. [Mother] will follow the reasonable rules and recommendations of Anoka County Community Health and Social Services.

3. [Mother] will maintain regular involvement and cooperation with the social worker.

4. [Mother] will begin and successfully complete parenting classes.

5. [Mother] will begin and successfully complete individual counseling.

6. [Mother] will sign releases of information as requested by the social worker.

The plan also provided that the mother would have weekly visitation with the child at the Anoka County Courthouse. For the father, the plan provided only that appropriate visitation would be arranged if the father contacted the agency, and that if he did so, he would financially contribute to the support of the child to the best of his ability.

The social worker testified she did not include a full rehabilitative plan for the father in the social services plan because she was told there had been a divorce and the mother had custody of D.D.K. Following the hearing, the father informed the social worker he was going to Louisiana to look for work. He had no contact with the social worker for a year.

The social services plan was discussed with the mother, who disagreed with it, and felt she did not need the counseling or classes required of her. She did contact three private social service agencies, beginning but never completing counseling. The social worker suggested resources to her, but did not make actual referrals. The mother, who was on AFDC at all times and was without a car, was told of ways to obtain reimbursement for both programs and transportation to them.

Weekly visitation was set up for the mother at the Anoka County Courthouse. Of 31 possible visits in 1981, she made 10, called to cancel 11 because of transportation problems or illness, missed 3 without notice, and lost 7 due to holidays or conflicting plans of the foster parents.

The mother, who lived in Fridley at the time of the petition, moved to north Minneapolis shortly after the May 1981 hearing. She testified that she had to take the bus to Anoka in order to exercise visitation, and did not always have the money to do so. She stopped exercising visitation because it was emotionally disturbing to herself and the child.

D.D.K. was adjudicated to be "neglected and in foster care" following a hearing in May of 1982. Foster care placement was continued, along with the social service plan.

The father returned from Louisiana and sought visitation, which was granted beginning in September of 1982. Of 26 scheduled visits, he made 13. Beginning in February of 1983, he was allowed to take the child out of the courthouse for day-long visitation. This occurred on three occasions. The mother testified that he brought the child to visit her during these occasions.

A support order was entered in August, 1982, requiring the father to pay $17 per month. He has made no payments to Anoka County. Counseling and parenting classes were suggested to him by the social worker, but no written plan was drawn up. He has not completed either counseling or classes, and views his main rehabilitative goal as obtaining steady employment,

which he claims is difficult because of his illiteracy.

Both parents have had psychological evaluations, based on MMPI testing. The mother, who was evaluated in 1982 by the county's expert, was described as "a rather immature woman, quite impulsive and impetuous, someone who had experienced a great deal of victimization." She was sexually abused as a child.

The mother submitted the testimony of a psychologist, Dr. Cronin, who administered the MMPI in April, 1983, and again in March of 1984. He testified that although she exhibited a highly volatile and "problematic" personality in 1983, there was a "very dramatic change" in the 1984 test, which showed her to be clinically normal.

The psychological report on the father stressed his limited maturity and inability to grasp the developmental needs of his child.

The county submitted the testimony of the foster parents concerning the behavioral problems exhibited by D.D.K., including smearing of feces on the walls, destruction of property in the home, and self-destructive and self-mutilating behavior. Two psychologists, Dr. Kathryn Kuehnle and Dr. James Gilbertson, testified that D.D.K. is a "special needs" child, who has suffered from a chaotic environment and significant abuse, and needs a predictable, structured family environment.

### ISSUES

1. Was there sufficient evidence to support the termination of the mother's parental rights?

2. Was there sufficient evidence to support the termination of the father's parental rights?

### ANALYSIS

### I.

The trial court ordered termination of the mother's parental rights upon the following statutory grounds:

(1) That the parent has abandoned the child; or

(2) That the parent has substantially, continuously, or repeatedly refused or neglected to comply with the duties imposed upon that parent by the parent and child relationship, including but not limited to providing the child with necessary food, clothing, shelter, education, and other care and control necessary for the child's physical, mental or emotional health and development, if the parent is physically and financially able; or

\* \* \* \* \* \*

(4) That a parent is palpably unfit to be a party to the parent and child relationship because of a consistent pattern of specific conduct before the child or of specific conditions directly relating to the parent and child relationship either of which are determined by the court to be permanently detrimental to the physical or mental health of the child; or

(5) That following upon a determination of neglect or dependency, reasonable efforts, under the direction of the court, have failed to correct the conditions leading to the determination; or

\* \* \* \* \* \*

(7) That the child is neglected and in foster care.

Minn.Stat. § 260.221(b) (1984).

Parental rights may not be terminated unless the party seeking termination presents clear and convincing evidence that a specific statutory ground for termination exists. *In re Mass*, 355 N.W.2d 480, 482 (Minn.Ct.App.1984). Only one of the statutory grounds must be found. *In re R.M.M.*, 316 N.W.2d 538, 541 (Minn.1982). Such a finding in support of termination will not be reversed unless clearly erroneous. *In re Solomon*, 291 N.W.2d 364 (Minn.1980). An appellate court, however, exercises great caution in termination cases, upholding a trial court's decision to terminate parental rights only when the evidence clearly mandates such a result in accordance with statutory standards. *In re Kidd*, 261 N.W.2d 833, 835 (Minn.1978).

We address the facts of this case in light of the standard set forth in Minn.Stat. § 260.-221(b)(5).

■ D.D.K. was adjudicated a dependent child in May, 1981, following a report of physical abuse with severe injuries. The mother denied that her boyfriend had abused the child, although she had herself entered a women's shelter due to the boyfriend's physical abuse. In a termination proceeding, however, the court must examine conditions as they exist at, and up to, the time of the termination hearing, and not conditions leading to the finding of neglect or dependency. *In re Clausen*, 289 N.W.2d 153, 156 (Minn.1980).

The mother was provided with a written case plan outlining the efforts necessary to correct the condition of dependency. *See R.M.M.*, 316 N.W.2d at 542 (necessity of a written case plan where child is placed in foster care). This plan was sufficient to inform her of what was required of her. The record reflects a resistance on her part to any rehabilitative efforts, and a denial of any inadequacies as a parent. A more detailed rehabilitative plan would have been of no use.

■ The mother failed to complete either parenting classes or individual counseling. She maintained sporadic visitation for a year and then discontinued it. While there is no evidence in the record that she has engaged in abusive relationships since October, 1981, the testimony of the psychologists and foster parents established that D.D.K. has serious emotional and behavioral problems resulting from the prior abuse. We do not believe the "conditions leading to the determination [of dependency]," Minn.Stat. § 260.221(b)(5), which the parent must correct, can be read so narrowly as to exclude the psychological effects of the physical abuse experienced by the child.

The psychologists who examined D.D.K. agreed that she is a "special needs" child who requires a structured, predictable home environment in order to recover from her chaotic, abusive past environment. *See In re Adams*, 352 N.W.2d 105, 107 (Minn.

Ct.App.1984) *pet. for rev. denied* (Minn. Nov. 8, 1984) (development of "special needs" child stymied under parent's care). Although the mother presented contrary testimony, two psychologists agreed that she was unable to provide the home needed by the child. Although the mother's continued custody of her son may reflect on her ability to parent an average child, it is not relevant to the correction of the conditions of D.D.K.'s dependency, or the mother's ability to care for a "special needs" child.

The supreme court has stated that, in considering termination based on Minn. Stat. § 260.221(b)(5):

> [T]he foreseeable permanency of the inability of the parent is a relevant factor in determining whether reasonable efforts have failed to correct the conditions leading to the neglect adjudication.

*Clausen*, 289 N.W.2d at 155.

■ Given the critical fact that D.D.K. is a "special needs" child demanding exceptional parenting skills, we believe that there was clear evidence that her mother's inability to provide adequate care would continue in the future. In *In re A.K.K.*, 356 N.W.2d 337, 341 (Minn.Ct.App.1984), this court found that standard to be met where the mother resisted rehabilitation, exercised visitation only sporadically, and was shown by psychological testing to have a poor prognosis for treatment. Significantly, the child in *A.K.K.* was not a "special needs" child with a history of physical abuse.

## II.

The following statutory grounds were found for termination of the father's parental rights:

(2) [neglect of parental duties];

(3) That a parent has been ordered to contribute to the support of the child * * and has continuously failed to do so without good cause. * * *

(5) [failure to correct condition of dependency];

(7) [neglected and in foster care].

Minn.Stat. § 260.221(b) (1984). We review the termination of the father's parental rights under the same standards set out above regarding the mother's rights, and under the same statutory ground, Minn. Stat. § 260.221(b)(5) (failure to correct conditions of dependency).

The written case plan adopted at the dependency hearing provided as follows concerning the father:

 1. Should father wish visitation, he will contact Anoka County Community Health & Social Services [hereafter, CHSS]. A plan of appropriate visitation will be arranged.

 2. Should father contact CHSS, father will financially contribute to his child's support to the best of his ability.

The preliminary nature of this plan for the father was due to his lack of contact with the agency, or with the child, at that time.

■ A written case plan must be given to a parent or parents when a child is placed in foster care. Minn.Stat. § 257.-071, subd. 1 (1984); *see also In re Copus*, 356 N.W.2d 363, 366 (Minn.Ct.App.1984). We do not believe, however, that a written plan complying with the statute in all respects can be required for *each* of two separated or divorced parents. *See* Minn. Stat. § 257.071, subd. 1(6) (date on which child is expected to be returned to the home); *see also R.M.M.*, 316 N.W.2d at 542; *Copus*, 356 N.W.2d 363 (both cases involving one parent, in which full compliance with the statute was not specifically required). Physical custody can be restored to only one of the two parents. The father here was from the beginning of the proceeding, and due to his own lack of contact, considered an alternative placement or custody resource. The evidence shows that he failed to make a reasonable effort to become a reliable custodian for D.D.K., so as to correct the condition of her dependency.

The father has failed to maintain a consistent visitation schedule, missing one-half the scheduled visits, and has failed to pay any support. He has also failed to complete the parenting classes suggested to him by the social worker.

■ Sporadic visitation and sporadic child support payments are in themselves insufficient to support a termination of parental rights. *In re L.L.N.*, 372 N.W.2d 60, 62 (Minn.Ct.App.1985). In *L.L.N.*, however, the needs of a dependent child were not at issue, since termination of the father's rights was sought by a mother who had custody of the child and had remarried. *See also In re Gillispie*, 296 N.W.2d 878 (Minn.1980) (termination sought for adoption by stepfather); *In re Linehan*, 280 N.W.2d 29 (Minn.1979) (stepfather's petition for termination). Thus, neither of the cases cited in *L.L.N.*, nor that case itself, dealt with the needs of a dependent child.

Here the father was required to pay support as one aspect of a reasonable effort at rehabilitation, in order that the child's dependency might be corrected by placing her in his or the mother's custody. The amount of support ordered, $17 per month, is so minimal that the total failure to comply suggests either a lack of interest in the child or a lack of maturity with respect to parental obligations.

■ D.D.K. is a special needs child. The record, however, supports the trial court's finding that the father has a chronic employment problem, a difficulty which could prevent his being considered for custody of even an average child. The record also supports the court's finding that the father has insufficient maturity or parenting skills to parent a special needs child such as D.D.K. As a result, the condition of dependency was not corrected, despite the reasonable efforts of the county. Moreover, this inability of the father to provide adequate care is, as to the foreseeable future, a permanent one. *See Clausen*, 289 N.W.2d at 155.

### DECISION

The trial court's termination of the mother's and the father's parental rights was supported by clear and convincing evidence that each had failed to follow the written case plan and that neither parent would be

able to provide adequate care for a "special needs" child.

Affirmed.

James V. Roth, Minneapolis, for relator.

John M. Giblin, Minnetonka, for Campbell-Logan Bindery, Inc.

Hubert H. Humphrey, III, Atty. Gen., James Patrick Barone, Sp. Asst. Atty. Gen., St. Paul, for Dept. of Economic Sec.

Heard, considered, and decided by POPOVICH, C.J., and LESLIE and NIERENGARTEN, JJ.