**In re the Marriage of Gerald L. KIMMEL, Petitioner, Respondent,**

v.

**Karen A. KIMMEL, n.k.a. Karen A. Nogle, Appellant.**

**No. C9-85-1571.**

Court of Appeals of Minnesota.

Sept. 2, 1986.

Review Denied Oct. 29, 1986.

Charles E. Mertensotto, Rowland & Mertensotto, Saint Paul, for Gerald L. Kimmel.

William E. Haugh, Jr., Collins, Buckley, Sauntry & Haugh, Saint Paul, for Karen A. Kimmel.

Considered and decided by POPOVICH, C.J., and PARKER and FOLEY, JJ., with oral argument waived.

## AMENDED OPINION

FOLEY, Judge.

This is an appeal of a child custody modification resulting from a domestic abuse action and a family court custody proceeding. Appellant Karen A. Nogle (formerly Kimmel) contends the trial court abused its discretion in awarding custody of her son, Michael, to the Ramsey County Department of Human Services for placement with the child's father and the eventual permanent modification of Michael's custody. We affirm.

## FACTS

Karen and Gerald Kimmel were married in 1976 and are the parents of one child, Michael, now age nine. They were divorced in 1978. Michael lived with his mother until July 1983, except for eight months in 1979, when he was in a foster home. Both parents remarried.

Gerald married his present wife, Jeanette, in 1979. Karen married Lawrence Nogle in 1981, and they had one child, Sasha, who is now three. Karen and Lawrence Nogle were divorced in 1982. She testified that Nogle became abusive after their marriage and particularly after he lost his job. In July 1981, Karen obtained an order for protection from Nogle in Dakota County. However, they reconciled in

September when Nogle promised to go for alcohol abuse treatment.

Karen left Nogle again in January 1982 and moved into a women's shelter with her two children. She is currently unemployed and receives $412 per month in AFDC benefits. In October 1982, the Child Protection Division of the Ramsey County Human Services Department was contacted by the St. Paul Police Department concerning Karen and her children. The trial court's findings referred to a police report and referral to the Child Protection Division that Karen was hitting Michael and threatening to kill him. As a result of that incident, the children were moved from her home and placed overnight in a foster home. They were returned to her the next day.

However, at that time two social workers were assigned to work with her. Karen told the social workers that her former husband, Nogle, had thrown Michael against the wall and ceiling, pulled his hair, and put Michael's foot into a 24-inch fan blade. The child also verified the injuries and said he was afraid of Nogle and did not want to be around him.

In June 1983, Karen initiated a domestic abuse proceeding in Ramsey County District Court, alleging that Nogle physically abused her and the children. She also asserted that Michael's school psychologist said he was having problems in school because of the abuse. Based upon her petition, the court issued an ex parte temporary order for protection and an order to show cause.

A hearing was held before a family court referee on June 14, 1983. Karen and Nogle both appeared, and the court issued an order for protection which limited Nogle's visitation rights and required the Department of Court Services to supervise such visitation. At a review hearing on July 27, 1983, Michael was temporarily placed in the custody of the Department of Human Services for placement with his natural father, Gerald Kimmel, respondent in this action. The court awarded temporary custody to Gerald Kimmel without any petition by the

county or Kimmel. Karen was not notified prior to the hearing that anything other than Sasha's visitation with her father was at issue.

According to an affidavit by respondent Gerald Kimmel, a social worker contacted him on Monday, July 25, 1983 stating that there was a possibility that Michael would be taken from Karen because of physical abuse of Michael by his stepfather and Karen's failure to protect the child from such abuse. On Wednesday, July 27, the Ramsey County Department of Human Services requested that he accept temporary custody of Michael, which he did.

At the hearing the social workers testified that Karen defied the order for protection by allowing Nogle to see the children and to stay in her home. Apparently she even left Michael and Sasha in Nogle's care while she went to an appointment with a Court Services Department worker and then to the grocery store. Meanwhile, Gerald Kimmel moved the court for modification of the 1978 judgment and decree.

The evidentiary hearing on Gerald Kimmel's motion for the custody change took place on March 19, 1984, and was continued on April 10, 1984. Michael has remained in his father's home from the entry of the domestic abuse order in July 1983 through the present. On August 8, 1984 the trial court amended the decree and awarded custody of Michael to his father. Following several attempts at appeal, Karen moved the district court to amend the findings of fact and conclusions of law contained in the June 13 order to give her custody of Michael. The motions were denied.

Karen appealed pro se in August 1985 from a non-appealable order denying her motions. She could have appealed from a June 13, 1985 order affirming an August 8, 1984 order that amended custody provisions of the 1978 judgment. Karen's trial counsel was incapacitated, and she was unable to obtain other counsel to assist in filing this appeal. The court grants review in the interest of justice pursuant to Minn. R.Civ.App.P. 103.04. Karen eventually obtained the pro bono assistance of William

E. Haugh, Jr., who raised the proper arguments on appeal to protect her rights.

### ISSUES

1. When faced with an emergency situation requiring immediate action to protect a nine-year-old child from further physical abuse, did the trial court abuse its discretion in awarding temporary legal custody of the child to the Ramsey County Department of Human Services and then to his natural father under the domestic abuse statute without strict compliance with statutory criteria?

2. Does the evidence support the permanent custody modification?

### ANALYSIS

1. Karen claims the court exceeded its authority when it transferred custody of her son to the Ramsey County Department of Human Services for placement with his natural father. It is undisputed that Karen had no official notice that the court was considering such action. The court bases its authority on Minn.Stat. § 518B.01, subds. 6(c) and 6(g) (1984).

Minn.Stat. § 518B.01, subd. 6 provides:

**Subd. 6. Relief by the court.** Upon notice and hearing, the court may provide relief as follows:

(a) Restrain any party from committing acts of domestic abuse;

(b) Exclude the abusing party from the dwelling which the parties share or from the residence of the petitioner;

(c) On the same basis as is provided in chapter 518, award temporary custody or establish temporary visitation with regard to minor children of the parties;

(d) On the same basis as is provided in chapter 518, establish temporary support for minor children or a spouse, and order the withholding of support from the income of the person obligated to pay the support according to chapter 518;

(e) Provide counseling or other social services for the parties, if married, or if there are minor children;

(f) Order the abusing party to participate in treatment or counseling services;

(g) Order, in its discretion, *other relief as it deems necessary for the protection of a family or household member,* including orders or directives to the sheriff or constable, as provided by this section.

(emphasis added).

On July 27, 1983, Karen thought she was attending a hearing to determine visitation for her ex-husband Lawrence Nogle with his daughter, Sasha. There was no formal opportunity for her to be heard before she lost temporary custody of her son.

Karen cites *Murray v. Murray,* 367 N.W.2d 561 (Minn.Ct.App.1985), to support her position that the family court referee exceeded his authority by removing Michael from her custody. In *Murray,* this court held that in a dissolution proceeding under Chapter 518, the family court did not have the authority to award legal custody of the parties' children to the county. However, the proceeding here was initiated under the domestic abuse statute, not the dissolution statutes.

Minn.Stat. § 518B.01, subd. 6 indicates that notice and a hearing are required in a domestic abuse proceeding when custody modifications are contemplated. Minn. Stat. § 518B.01, subd. 6(c) directs that such procedures be conducted according to Chapter 518, the dissolution custody statutes. Minn.Stat. § 518.156, subd. 1(b) (1984) sets forth the procedure for a nonparent to initiate custody proceedings. Subdivision 2 requires that a parent be given written notice of the proceeding and an opportunity to be heard.

Minn.Stat. § 518.131 (1984) provides that *a party* may move for a temporary custody change pending final disposition. While subdivision 3 permits a party to request an ex parte restraining order, no mention is made of an ex parte custody modification or motions by a non-party. In this situation, the parties to the domestic abuse proceeding were Lawrence and Karen Nogle and the children.

In *Sweep v. Sweep,* 358 N.W.2d 451 (Minn.Ct.App.1984), we affirmed a custody

award to a child's maternal grandparents pursuant to a domestic abuse proceeding under Minn.Stat. § 518B brought by the child's stepmother (her mother was deceased). The child's grandparents appeared at the hearing, without notice, and sought custody. The stepmother was not aware of the request. In explaining the decision, we stated, "The focus in any custody determination is, and must be, on the best interest of the child. Were we to do other than affirm the court's exercise of its discretion, we would be introducing more instability into Tracy's life * * *." *Id.* at 453.

■ While the court may not have strictly adhered to the statutory procedure, this was an emergency situation which compelled the court to apply its broad equitable powers. Further, it is clear the county could have petitioned for the custody modification under the domestic abuse statutes. In this case and given this set of facts, it is clear the court was faced with an emergency situation. Michael's health, safety and welfare was in jeopardy. We cannot say it was an abuse of discretion for the court to act quickly to protect this child.

■ Once the child's natural father petitioned for permanent custody, the court adhered strictly to the statutory procedures and Karen was given notice and an opportunity to be heard. Any previous procedural defect was remedied at that time.

2. Karen also argues that, independent of the domestic abuse proceedings, the evidence does not support the modification awarding custody of Michael to his father.

It is well established that the trial court has continuing jurisdiction relating to child custody matters, and may modify custody if warranted. *Hummel v. Hummel*, 304 N.W.2d 19, 20 (Minn.1981). The criteria a court must consider when it contemplates a custody modification is set forth in Minn. Stat. § 518.18(d) (1984), which provides:

[T]he court shall not modify a prior custody order unless it finds, upon the basis of facts that have arisen since the prior

order or that were unknown to the court at the time of the prior order, that a change has occurred in the circumstances of the child or his custodian and that the modification is necessary to serve the best interests of the child. In applying these standards the court shall retain the custodian established by the prior order unless:

\* \* \* \* \* \*

(iii) The child's present environment endangers his physical or emotional health or impairs his emotional development and the harm likely to be caused by a change of environment is outweighed by the advantage of a change to the child.

■ Gerald Kimmel, as the party requesting the modification, has the burden of proving preliminarily that a significant change in circumstances has taken place. *Nice-Peterson v. Nice-Peterson*, 310 N.W.2d 471, 472 (Minn.1981); *Englund v. Englund*, 352 N.W.2d 800, 802 (Minn.Ct. App.1984). The trial court has broad discretion in custody determinations and will not be reversed without a clear showing of abuse of discretion. *Englund*, 352 N.W.2d at 802 (citations omitted).

■ *In re Marriage of Gottenborg*, 343 N.W.2d 674, 676 (Minn.Ct.App.1984), requires the trial court to make specific findings when modifying a custody determination. Such specific findings are included in the August 8, 1984 order amending the judgment. These findings document a history of physical abuse, Michael's poor school performance, behavioral problems, and lack of personal hygiene.

Testimony from child protection workers and his mother depict Michael as a victim of abuse. Karen admitted that Lawrence Nogle grabbed Michael, threw him to the ceiling, pulled him by his hair and ears, struck him with a belt and shoved his foot into a rotating fan blade. She also admitted that she ignored the order for protection and permitted Nogle to visit Michael and, in fact, left him in Nogle's care.

School records show that Michael has progressed significantly since placement with his father. A custody evaluation report from the Department of Court Services also recommended that Michael be placed in his father's custody.

Karen claims that Michael was removed from her custody because she is poor. This argument is without merit. The parties' financial situations have no bearing on this case. The record is filled with incidents of physical abuse inflicted upon Michael by his stepfather; a man his mother continued to let care for her son. Based on the record, it is clear the trial court did not abuse its discretion by modifying the custody award.

### DECISION

The trial court did not abuse its discretion in awarding custody of a nine-year-old boy to his father where the mother ignored an order for protection and continued to leave her son in the abuser's care.

Affirmed.