**In the Matter of the WELFARE OF:**
**J.S., J.S., and J.H.–S.**

Nos. C2–90–2219, C9–90–2220.

Court of Appeals of Minnesota.

May 28, 1991.

Review Denied July 24, 1991.

**698**

William R. Kennedy, Hennepin County Public Defender, Warren R. Sagstuen, William J. Briere, Asst. Public Defenders, Minneapolis, for appellant mother.

Thomas J. O'Connor, Burnsville, for appellant father.

Michael O. Freeman, Hennepin County Atty., Robert W. Gyurci, Asst. County Atty., Minneapolis, for respondent County.

Eric S. Rehm, Blackmar and Rehm, Burnsville, for guardian ad litem.

Wright S. Walling, Jody Ollyver DeSmidt, Walling & Berg. P.A., Minneapolis, for amicus Ass'n of Guardians ad Litem.

Considered and decided by
PETERSON, P.J., and PARKER and
FOLEY, JJ.

## OPINION

FOLEY, Judge.

Mother and father appeal from an order terminating their parental rights as to their three children pursuant to Minn.Stat. § 260.221, subd. 1(b)(2), (5), (7) (Supp.1989). We affirm.

## FACTS

The mother and father are the parents of three children: J.S. (female), born August 6, 1984; J.S. (male), born April 15, 1986; and J.H.–S., born February 2, 1988. Their parental rights as to all three children were terminated in an order filed September 7, 1990. On appeal, the father challenges the termination of his parental rights as to all three children. The mother challenges the termination of her parental rights only as to J.H.–S.

The Hennepin County Bureau of Social Services first became involved with this family in September 1986. At that time, male J.S. was removed from the home because of multiple fractures of both arms and left leg. On September 5, 1986, a dependency and neglect petition was filed. Male J.S. was placed with his maternal grandmother, and Lynne MacBean was appointed guardian ad litem.

On June 3, 1987, male J.S. was found to be a dependent and neglected child. The trial court found the mother and father responsible for causing the injuries to male J.S. The trial court also found reasonable services had been provided in an attempt to reunite the family, but there had not been sufficient improvement to justify returning male J.S. to the home. Male J.S. continues to reside with his maternal grandmother, where he has thrived and become an integral part of that family.

The Bureau of Social Services removed female J.S. from the home in August 1987. She had exhibited behavior that led child protection worker Nancy Schaefer to believe female J.S. had been sexually abused. Female J.S. was placed in foster care, and MacBean was appointed guardian ad litem. On September 8, 1987, a dependency and neglect petition was filed.

On February 2, 1988, J.H.–S. was born and within 24 hours was removed from his parents' care by the Bureau of Social Services. On February 3, 1988, a dependency and neglect petition was filed. There was concern J.H.–S. would likely suffer serious emotional and physical harm if left in the care of his parents. MacBean was again appointed guardian ad litem.

The dependency and neglect petitions on behalf of female J.S. and J.H.–S. were consolidated and tried in August 1988. The trial court found female J.S. had not been sexually abused by her father, but it found she had suffered severe emotional deprivation in her parents' care. She demonstrated behavorial problems of enuresis, encopresis, and frequent masturbation with objects in the presence of others. The trial court found neither parent was able to demonstrate sufficient parenting skills to provide adequate care or able to provide a secure and consistent environment for female J.S.

The trial court also found that, given the serious injuries suffered by male J.S. before he was six months of age and the emotional deprivation suffered by female J.S. by the age of three, J.H.–S. would also likely suffer serious emotional and physical harm if placed in the care of his parents. The trial court noted that reasonable efforts had also been made by the Bureau of Social Services to reunite the two children with their parents. The two children were found to be dependent and neglected. It was ordered that they both remain in temporary foster care. Both children continue to reside in foster homes.

In its findings of fact, conclusions of law and order of November 15, 1988, the trial court adopted a case plan to be followed by the parents in regard to all three children.

The case plan provided that the mother would participate in individual therapy and would cooperate with all recommendations and referrals made by her therapist. The mother was also ordered to successfully complete a family school program with a Minneapolis hospital, cooperate with the hospital's recommendation and referrals, and demonstrate substantial progress in understanding her children's physical and emotional needs.

The father was ordered to successfully complete a psychological evaluation, cooperate with all recommendations and referrals made, and apply for medical assistance. He was required to successfully complete parenting and independent living skills programs. The programs included attending weekly sessions, cooperating with all recommendations and referrals, and demonstrating substantial progress in understanding the physical and emotional needs of his children. He was ordered to have a chemical dependency assessment and cooperate with any recommendations resulting from it. He was also ordered to involve himself in an educational, vocational or employment program on a regular and consistent basis.

The plans also provided that each parent was to arrange weekly visits with the children, attend regularly-scheduled medical appointments for the children, and participate in therapy for female J.S. Each parent was also required to maintain regular contact with Schaefer and obtain housing suitable for their children.

From the time the Bureau of Social Services first removed male J.S. from the home until the time of trial, it provided numerous services to the family in order to alleviate the conditions that led to the findings of dependency and neglect. Both parents received individual therapy and psychological evaluations from licensed psychologists. They also received extensive assistance from Schaefer. The mother was enrolled in a prenatal care program, a young mother's support group, a parent education program and a program designed to assist her in performing her parental duties. The father was enrolled in a par-

enting program, independent living classes and weekly sessions dealing with the intervention of child abuse and neglect. Other help in the form of foster care, chemical assessements and therapy for female J.S. was also provided.

On January 8, 1990, MacBean filed a petition for termination of parental rights as to all three children. She alleged that, despite the continued efforts of the Bureau of Social Services, both parents had failed to comply with the case plans in any significant way. Thereafter, the mother moved for removal of MacBean as the guardian ad litem because of her new role as petitioner. The father joined in the motion. The motion was denied, and following a hearing, the trial court terminated the parental rights pursuant to Minn.Stat. § 260.221, subd. 1(b)(2), (5) and (7). This is the consolidated appeal of the parents from that decision.

## ISSUES

1. Did the trial court err in allowing the guardian ad litem to serve in that role after she filed the petition for termination of parental rights?

2. Is the trial court's termination of parental rights supported by clear and convincing evidence?

## ANALYSIS

■ 1. The parents contend the trial court erred in failing to appoint a new guardian ad litem after MacBean filed the petition for termination of parental rights. The parents claim it was unlawful for MacBean to continue to serve as guardian ad litem. They argue the roles of guardian ad litem and petitioner may not be simultaneously exercised by one person. We disagree.

Minn.Stat. § 260.155, subd. 4 (1988) provides:

(a) The court shall appoint a guardian ad litem to protect the interests of the minor when it appears * * * that the minor is without a parent or guardian * * * or

that the parent or guardian is indifferent or hostile to the minor's interests * * *.

\*   \*   \*   \*   \*   \*

(c) In appointing a guardian ad litem pursuant to clause (a), the court shall not appoint the party * * * filing a petition pursuant to section 260.131.

Although the statute precludes the appointment of a petitioner as guardian ad litem, it does not provide any direction for the specific facts of this case, where the properly-appointed guardian ad litem subsequently files the termination petition.

■ "The primary purpose of the Juvenile Court Act is to ensure the welfare of minor children." *In re Welfare of Solomon*, 291 N.W.2d 364, 369 (Minn.1980). Under the act, the guardian ad litem has standing as a party to protect the best interests of the child. *Id.* The guardian ad litem has the duty to act within the judicial proceedings to further the best interests of the child, and to do so the guardian ad litem must be free "to engage in a vigorous and autonomous representation of the child." *Tindell v. Rogosheske*, 428 N.W.2d 386, 387 (Minn.1988).

Additionally, Minnesota Judges Association, *Guidelines for Guardians Ad Litem* (June 1986), cited by the parents, specifically provides that one of the duties of the guardian ad litem is to petition the court for termination whenever he or she feels that such action is necessary. The guidelines state:

> The guardian ad litem should take the initiative of filing a petition whenever he or she feels such action is necessary to protect or serve the best interests of the child. Such instances may include * * * filing a termination of parental rights petition when the child is in need of permanency and is not able to be reunited with the family.

*Id.* at 31 (emphasis added).

Here, the guardian ad litem filed the petition for termination and the Bureau of Social Services joined in the petition. The trial court held that guardians ad litem "are entitled to file petitions on behalf of the children they are representing." We agree. The trial court did not err in mak-

ing this determination. *Cf. In re Welfare of Maas*, 355 N.W.2d 480, 482 (Minn.App. 1984) (petitioner also previously-appointed guardian ad litem).

2. The parents also contend the termination of their parental rights was not supported by clear and convincing evidence. In termination proceedings, there is a presumption a natural parent is fit and suitable to be entrusted with caring for his or her children and it is ordinarily in the best interest of the children to remain in the custody of the natural parent. *In re Welfare of A.H.*, 402 N.W.2d 598, 602 (Minn.App.1987). Therefore, "strict statutory factors must be met before parental rights can be terminated." *In re Welfare of P.J.K.*, 369 N.W.2d 286, 290 (Minn.1985).

The petitioner has the burden of proving by "clear and convincing evidence that one or more of the statutory termination grounds exists." *In re Welfare of C.K.*, 426 N.W.2d 842, 847 (Minn.1988).

> In addition to the statutory grounds, the petitioner must show that conditions justifying termination exist at the time of trial and will continue to exist for an indeterminate period.

*In re Welfare of D.F.B.*, 412 N.W.2d 406, 410 (Minn.App.1987), *pet. for rev. denied* (Minn. Nov. 18, 1987) (citing *In re Welfare of Chosa*, 290 N.W.2d 766, 769 (Minn. 1980)). The trial court must then take into account the best interests of the children. *In re Welfare of M.G.*, 407 N.W.2d 118, 120–21 (Minn.App.1987) (citing *In re Welfare of J.J.B.*, 390 N.W.2d 274, 279 (Minn. 1986)).

Where the trial court finds clear and convincing evidence in support for termination, its decision will not be overturned unless clearly erroneous. *P.J.K.*, 369 N.W.2d at 290. However, appellate courts will continue to exercise great caution in determining whether the evidence clearly mandates termination in accordance with the statute. *Id.*

Here, the trial court based the termination of parental rights on three grounds found in Minn.Stat. § 260.221, subd. 1(b)(2), (5) and (7). The trial court stated that it had found clear and convincing evidence supporting termination under these statutes. As to each of the three grounds, this court does not find the trial court's decision clearly erroneous.

### A. *Neglect of Duties*

The trial court found that both parents had refused and neglected to comply with the duties imposed upon them by the parent and child relationship including, but not limited to, providing the children with necessary food, shelter and other care and control necessary for their physical, mental and emotional health and development, even though both parents were physically and financially able to do so. Also, the trial court found that reasonable efforts by the Bureau of Social Services failed to correct the conditions that formed the basis of the petition.

Before termination can occur under Minn.Stat. § 260.221, subd. 1(b)(2), it must be shown by clear and convincing evidence that the parents have

> substantially, continuously, or repeatedly refused or neglected to comply with the duties imposed upon [them] by the parent and child relationship, including but not limited to providing [the children] with necessary food, clothing, shelter, education, and other care and control necessary for [their] physical, mental, or emotional health and development, if [the parents are] physically and financially able, and reasonable efforts by the social service agency have failed to correct the conditions that formed the basis of the petition;

The parents contend the trial court failed to find that they had neglected their duties as parents. They also assert they have not been able to carry out all of the normal parental duties because of conditions outside of their control, particularly Schaefer's bias. We disagree.

The facts indicate that both the mother and father have neglected to comply with their duties as parents. Both have repeatedly failed to obtain suitable housing. The mother has recently obtained a two-bedroom townhouse suitable for raising her

children. The father lived with another woman in a two-room addition to a house in the year and a half prior to trial and before that lived temporarily in the homes of his brother and his mother. He also spent one month in 1989 at the Hennepin County Workhouse for driving with a suspended license. His license remained suspended at the time of trial.

Both parents failed to maintain weekly visitation with their children. The mother saw J.H.–S. on approximately 16 occasions in the year and a half prior to trial. She scheduled a number of other appointments during that time, but either cancelled or failed to show up. Similarly, at the time of trial, the father had last seen female J.S. in December 1988 and failed to attend her medical appointments or therapy sessions. Although the father testified he visited male J.S. and J.H.–S. while they were at their paternal grandmother's, the visits were irregular. In the six months prior to trial the father had no contact or minimal contact with the two boys. In addition, he never attended any medical appointments for the two boys.

Neither parent gave an adequate explanation for the injuries incurred by male J.S. before he was six months old nor understood the special needs of female J.S. The father stated he did not feel he had any need to make any changes in his lifestyle or how he related to his children. He did not feel he had any responsibility for the abuse and neglect of his children.

The mother testified it was in the best interest of female J.S. to remain in the foster home and in the best interest of male J.S. to remain with the grandmother. The mother stated she hoped both placements could become permanent and she did not want the children to be placed with the father. Likewise the father testified he was not prepared to care for the children.

Reasonable efforts by the Bureau of Social Services have failed to correct the conditions that led to the findings of dependency and neglect. The mother did not successfully complete the program designed to assist her in performing her parental duties, attending only 11 of the 19 sched-

uled sessions. She also failed to participate in the individual therapy sessions. Out of 10 sessions scheduled, she went to only 2. Her therapist, Dr. Paula DePue, testified that the mother interacted well on an intellectual level but not on an emotional level. DePue testified that the mother was not able to demonstrate substantial progress in understanding her children's physical and emotional needs. In DePue's opinion, the mother was not ready to raise her children.

The father admits he never successfully completed any of the parenting and independent living programs set up for him. He also admits he failed to complete a chemical dependency assessment. The coordinator for programs testified that the father did not cooperate with recommendations, nor did he demonstrate progress in understanding his children's physical or emotional needs or in obtaining parenting skills. He also failed to obtain a psychological evaluation until after the petition for termination was filed.

> Whether the county has met its duty of reasonable efforts requires consideration of the length of time the county was involved and the quality of the effort.

*In re Welfare of H.K.*, 455 N.W.2d 529, 532 (Minn.App.1990), *pet. for rev. denied* (Minn. July 6, 1990). In this case, the efforts of the Bureau of Social Services began at the time male J.S. was first removed from the home in September 1986 and extended to the time of trial in July 1990. The Bureau of Social Services has made genuine efforts to assist the parents to alleviate the conditions that gave rise to the petition and to reunite the family. A petition for termination is supported by clear and convincing evidence where the parents have failed to work with the welfare agency. *In re Welfare of D.I.*, 413 N.W.2d 560, 564–65 (Minn.App.1987) (failure to work with agency found to constitute refusal to comply with duties imposed by parent-child relationship). Therefore, the requirements of Minn.Stat. § 260.221, subd. 1(b)(2) were met with clear and convincing evidence.

### B. *Failure to Correct Conditions*

■ The trial court also found that, following determinations of dependency as to all three children, reasonable efforts under the direction of the court have failed to correct the conditions leading to the determination and placement and there is no indication the condition will be corrected in the foreseeable future.

The trial court may terminate all rights of parent to a child if it finds:

(5) That following upon a determination of neglect or dependency, * * * reasonable efforts, under the direction of the court, have failed to correct the conditions leading to the determination. It is presumed that reasonable efforts under this clause have failed upon a showing that:

(i) a child under the age of 12 has resided out of the parental home under court order for more than one year following an adjudication of dependency * * * and an order for disposition under section 260.191, including adoption of the case plan required by section 257.071;

(ii) conditions leading to the determination will not be corrected within the reasonably foreseeable future; and

(iii) reasonable efforts have been made by the social service agency to rehabilitate the parent and reunite the family.

Minn.Stat. § 260.221, subd. 1(b).

All three children are under the age of 12 and have been in foster homes for more than one year. Each child was adjudicated to be dependent and placed in the legal custody of the Bureau of Social Services. In the court's order of November 15, 1988, case plans were adopted as required by Minn.Stat. § 257.071 and included the actions to be taken by the parents to correct their parenting problems and the visitation requirements demanded of the parents.

■ The Bureau of Social Services made reasonable efforts to rehabilitate the parents and to reunite the family through many different services. The reasonableness of the efforts can be evidenced by the quantity and quality of assistance provided to the family. *A.H.*, 402 N.W.2d at 604.

Here a number of services have been provided to this family since September 1986. Both parents received, among other things, individual therapy from licensed psychologists, parent education classes and foster care assistance.

It is also clear that the conditions leading to the determination of dependency will not be corrected within a reasonably foreseeable time. Neither parent completed the parenting goals outlined in the placement plan. They also attended few of the sessions scheduled for themselves and their children. Failure to cooperate with the rehabilitation plan supports the conclusion that the present conditions will continue for a prolonged, indeterminate period. *M.G.*, 407 N.W.2d at 122. Therefore, the trial court's termination of parental rights under Minn.Stat. § 260.221, subd. 1(b)(5) is supported by clear and convincing evidence and the trial court's findings are not clearly erroneous.

### C. *Neglected and in Foster Care*

■ The trial court also held that all three children are neglected and in foster care as defined in Minn.Stat. § 260.221, subd. 1(b)(7) and also meet the criteria set forth in Minn.Stat. § 260.155, subd. 7.

"Neglected and in foster care" means a child:

(a) Who has been placed in foster care by court order; and

(b) Whose parents' circumstances, condition, or conduct are such that the child cannot be returned to them; and

(c) Whose parents, despite the availability of needed rehabilitative services, have failed to make reasonable efforts to adjust their circumstances, condition or conduct, or have willfully failed to meet reasonable expectations with regard to visiting the child or providing financial support for the child.

Minn.Stat. § 260.015, subd. 18 (1988). In determining whether the children are "neglected and in foster care," the trial court is required to use the following factors: the length of time the children have been in foster care; the parents' visitation record during three months preceding the filing

of the petition; the parents' efforts to adjust circumstances, conduct, or conditions to make it in the children's best interest to return them to their home in the foreseeable future; the maintenance of regular contact; the appropriateness of services provided and whether they were reasonable; and whether additional services would likely bring about lasting parental adjustments enabling a return of the children within an ascertainable period of time. Minn.Stat. § 260.155, subd. 7 (Supp.1989). *See In re Welfare of J.J.L.B.*, 394 N.W.2d 858, 862 (Minn.App.1986), *pet. for rev. denied* (Minn. Dec. 17, 1986).

All three children had been in foster care or residing outside of their parents' home for nearly two and one-half years prior to the termination trial. It is reasonable to conclude that neither parent made a reasonable effort to improve parenting skills as reflected in failing to complete rehabilitative services offered. Schaefer testified that neither parent has maintained regular contact with her. Also, neither parent was visiting the children on a regular basis for the three months prior to the filing of the petition for termination.

The Bureau of Social Services provided many services to facilitate reunification. These efforts were reasonable, and based upon the lack of success demonstrated with those programs it is unlikely that additional services would bring about any improvement. Schaefer testified that there are no other services available to either parent that have not already been offered.

The trial court, though it did not specifically mention the factors enumerated in Minn.Stat. § 260.155, subd. 7, did show consideration for them in its findings. *See D.F.B.*, 412 N.W.2d at 410. The trial court found clear and convincing evidence that the children are neglected and in foster care. The trial court findings are not clearly erroneous.

Although the trial court made no findings on the best interest of the children, we find sufficient evidence in the record to support the court's decision to terminate as being in the children's best interest. *See D.F.B.*, 412 N.W.2d at 411.

## DECISION

This court has given studied attention to the entire trial transcript of some 846 pages. We conclude the trial court's finding for termination of parental rights on each of the three grounds was not clearly erroneous. We further conclude the parents were treated fairly and the record does not support allegations of bias.

Affirmed.