**In the Matter of the CHILD of E.V., parent, L.S.V., child.**

**No. C8–01–147.**

Court of Appeals of Minnesota.

Oct. 9, 2001.

R.Crim. P. 27.03, subd. 9 to conform to Minn. Stat. § 609.15, subd. 1(a) (2000).

Leonardo Castro, Hennepin County Public Defender, Peter W. Gorman, Assistant County Public Defender, Minneapolis, (for appellant E.V.).

Amy Klobuchar, Hennepin County Attorney, Mary M. Lynch, Assistant County Attorney, Minneapolis, (for respondent Hennepin County).

Stephen M. Goldfarb, Goldfarb & Associates, P.A., St. Louis Park, (for respondent guardian ad litem).

Considered and decided by CRIPPEN, Presiding Judge, SCHUMACHER and SHUMAKER, Judges.

## OPINION

CRIPPEN, Judge.

Appellant E.V. contends that the trial court erred in terminating her parental rights because she is adequately rehabilitated, her case was over-managed, and termination is not in the child's best interests. Because the trial court's findings do not address whether appellant's attempts to comply with the case plan failed to correct the conditions that led to her son's out-of-home placement, cautious review of the case requires that it be reversed and remanded for further findings.

## FACTS

The court adjudicated L.S.V. a child in need of protection or services (CHIPS) in September 1999 based on appellant-mother E.V.'s certified conviction of child neglect for "knowingly permitting the continuing physical abuse of [her] child" by her boyfriend. The court ordered compliance with the April 1999 case plan that required appellant to participate in therapy for herself, work with the child's mental-health professionals, and participate in a parenting education program. The boyfriend was convicted of assault and later deported to Jamaica. L.S.V., now 10 years of age, has been in out-of-home placement since April 1999.

Michael Sancilio, L.S.V.'s psychologist, diagnosed L.S.V. in consultation with a psychiatrist and clinical nurse specialist as having: (1) Attention Deficit Hyperactivity Disorder (ADHD); (2) Adjustment Disorder with Mixed Disturbance of Emotions and Conduct; (3) Possible Mixed Receptive Expressive Language Disorder; and (4) Klinefelter's Syndrome—according to a report from the Hennepin County Medical Center. For treatment, L.S.V. attended Washburn Child Guidance Center and by February 2000 had made significant progress. His "symptoms of impulsivity, distractability, hyperactivity, anxiety and worry, rapid mood changes, sudden angry outbursts, expressive language and reading delays" diminished after his doctor changed his medication from Ritalin to Dexedrine. Appellant did follow through with Hennepin County Medical Center where L.S.V. was diagnosed with Klinefelter's Syndrome, but failed to follow through with all of L.S.V.'s other mental-health professionals, including staff of L.S.V.'s program at Washburn.

In May 2000, appellant stated that she did not believe that L.S.V. needs special educational services or medication and that she would not continue those services. Appellant disputes that L.S.V. suffers an attention deficit disorder. Consequently, the court refused to return L.S.V. to appellant because "[s]he said she would not keep [L.S.V.] at Washburn Child Guidance Center, she would not have him take speech and language evaluation." The child services worker and Sancilio testified that it would be "critical" for L.S.V. to continue the services he is receiving.

Appellant completed the psychological evaluation and parenting assessment and met with an individual therapist, but did not complete individual therapy. Appellant did, however, receive a certificate for completing a workshop in nonviolent conflict resolution and participated in an anger management group in conjunction with the probationary terms of her conviction.

Appellant participated in in-home parenting services with Trenton Peterson, a home-based therapist for Generations Community Support Services. Peterson reported that appellant willingly met with him for parenting education. He observed

her with L.S.V., witnessed "exceptional parenting skills," and noted that appellant expressed her understanding of acceptable discipline techniques. Peterson also reported that appellant expressed a continued unwillingness to work with the county and stated that appellant "clearly believes in physical punishment," explained that she could still spank the children "with a hand on the bottom," and stated that she would home-school L.S.V. to ensure he received the attention he needs in school. Peterson discontinued working with appellant in September 2000 because he no longer acted as a therapist for appellant but as more of a supervisor and observer for her visits with L.S.V.

### ISSUES

1. Did the trial court err when it terminated appellant's parental rights?

2. Did the trial court err when it found that long-term foster care for the child is prohibited by law?

### ANALYSIS

 Reviewing courts determine whether the trial court's termination findings address the statutory criteria, are supported by substantial evidence, or are clearly erroneous. *In re Welfare of Chosa,* 290 N.W.2d 766, 769 (Minn.1980). Although some deference is given to the trial court's findings, appellate courts exercise great caution and "closely inquire into the sufficiency of the evidence to determine whether the evidence is clear and convincing." *In re Welfare of A.H.,* 402 N.W.2d 598, 603 (Minn.App.1987) (quotations omitted).

1. Termination

 "Parental rights are terminated only for grave and weighty reasons." *In*

*re Welfare of M.D.O.,* 462 N.W.2d 370, 375 (Minn.1990) (citation omitted). There is a presumption that the natural parent is suitable to be entrusted with the care of his or her child and that it is in the child's best interests to be in the natural parent's care. *In re Welfare of Clausen,* 289 N.W.2d 153, 156 (Minn.1980). The party petitioning for termination must prove one or more of the statutory grounds by clear and convincing evidence. *In re Welfare of J.S.,* 470 N.W.2d 697, 701 (Minn.App.1991), *review denied* (Minn. July 24, 1991). A "trial court [must] make clear and specific findings [that] conform to the statutory requirements for termination adjudications." *Chosa,* 290 N.W.2d at 769 (citation omitted).

The trial court concluded that clear and convincing evidence supported termination under four provisions of the statute: (1) refusal to comply with duties of the parent and child relationship under Minn.Stat. § 260C.301, subd. 1(b)(2) (2000); (2) reasonable efforts have failed to correct the conditions leading to the CHIPS determination under Minn.Stat. § 260C.301, subd. 1(b)(5) (2000);[1] (3) the father is not known, has not registered with the adoption registry, and is not entitled to notice under Minn.Stat. § 260C.301, subd. 1(b)(7) (2000); and (4) the child is neglected and in foster care under Minn.Stat. § 260C.301, subd. 1(b)(8) (2000). No one seeks review of the third criterion concerning the father.

Each CHIPS intervention requires a case plan that reflects the reasonable efforts of the agency to facilitate reunification,[2] and termination is appropriate when those reasonable efforts fail. *Id.,* subds. 1(b)(2) (allowing termination when "rea-

---

**1.** The legislature has changed some of the terminology of this section, but the changes do not affect our decision. *See* 2001 Minn. Laws ch. 178, art. 1 § 33.

**2.** Minn.Stat. §§ 260.012 (outlining reasonable

sonable efforts by the social services agency have failed to correct the conditions that formed the basis of the petition or reasonable efforts would be futile and therefore unreasonable"), 1(b)(5) (allowing termination when "reasonable efforts, under the direction of the court, have failed to correct the conditions leading to the child's placement"), 1(b)(8) (allowing termination when the child is neglected and in foster care, which, under Minn.Stat. § 260C.007, subd. 18(c) (2000), means that the "parents, despite the availability of needed rehabilitative services, have failed to make reasonable efforts to adjust their circumstances").

Appellant contends that the scope of the case plan exceeded what was necessary "to correct the conditions that formed the basis of the petition," and that the court should have found that she was adequately rehabilitated and returned her son to her. The court's findings about appellant's failure to comply with the case plan, which singularly support the court's conclusions that reasonable efforts have failed and termination is appropriate on three statutory grounds, fall into three broad categories: (a) appellant's failure to follow through with individual therapy (findings 6.1 and 6.2); (b) appellant's failure to follow through with the child's therapy and services (findings 7–13); and (c) appellant's failure to follow through with parenting education (findings 6.1 and 14–15). These findings, which are conclusory, fail on a basic level to address whether full compliance with the case plan's requirements was

necessary to correct the conditions that led to the out-of-home placement and whether the efforts appellant did make were insufficient to correct the conditions. *See In re Welfare of M.A.*, 408 N.W.2d 227, 236 (Minn.App.1987) (stating case plan cannot consist of "a litany of required services that were not related to the conditions that eventually gave rise to the dependency adjudication"), review denied (Minn. Sept. 18, 1987).[3] And prior approval of a case plan does not permit a current assumption that the breadth of the plan is limited to steps needed to correct the cause of an initial intervention.

*a. Failure to complete individual therapy*

■ The court found that appellant "failed to follow through with * * * therapy for herself * * * despite continued requests by the Department and orders of the Court." The court did not find that failure to obtain individual therapy impeded correction of the conditions that led to the out-of-home placement, and the cautious review that is required of us demands the conclusion that the therapy finding is insufficient to support termination. *See Clausen*, 289 N.W.2d at 156 (mandating appellate court exercise of "great caution" in termination proceedings).

*b. Failure to cooperate with L.S.V.'s mental health professionals*

■ The court made extensive findings about L.S.V.'s behavioral and emotional

---

efforts for rehabilitation and reunification), 260C.201, subd. 6 (requiring case plans with CHIPS dispositions), 260C.212 (governing the placement of children in foster homes and case plans) (2000). Minn.Stat. § 260.012 was amended in 2001 to add that reasonable efforts are not required when the parent's custodial rights to another child have been involuntarily transferred to a relative. 2001 Minn. Laws ch. 178, § 4.

**3.** But c.f. *In re Welfare of D.D.K.*, 376 N.W.2d 717, 721 (Minn.App.1985) ("We do not believe the 'conditions leading to the determination [of dependency],' which the parent must correct, can be read so narrowly as to exclude the psychological effects of the physical abuse experienced by the child." (citation omitted)).

problems and documented appellant's failure to participate in his therapy or programming. Like the previous category of findings, the court failed to find the case plan's requirements germane or necessary to correct the conditions that led to the out-of-home placement. The court quoted extensively from a June 1999 parenting evaluation but neither adopted the evaluator's findings nor explained cause for adopting those findings. Moreover, appellant contends that she failed to cooperate with L.S.V.'s mental-health professionals because she disagreed fundamentally with the diagnosis that her child has ADHD. She disputed that medication was necessary to correct L.S.V.'s problems, which she believed were caused by Klinefelter's Syndrome that apparently has similar behavioral manifestations. The court did not discuss her reasons for failing to comply, and most importantly, the court failed to find that medicating the child would be necessary to correct the conditions that led to the child's out-of-home placement.

### c. Failure to follow through with parenting education

■ Again, the court stated conclusively that appellant "failed to fully participate in an approved parenting education program." The difficulty with this set of findings is that appellant did participate in an at-home parenting education program for nearly six months, yet the court did not address whether her active participation in this program failed to correct the conditions that led to the out-of-home placement. More problematic was the court's singular focus on flaws in her progress in this program.

The record contains many progress reports by the therapist that show favorable opinions about appellant's parenting of L.S.V. The therapist reported that appellant willingly met with him individually for parenting education. He also observed her with L.S.V., witnessed exceptional parenting skills, and noted that appellant expressed her understanding of appropriate disciplinary techniques. Although the therapist discontinued his relationship with appellant, the court did not find that the progress noted by the therapist failed to correct the conditions or that appellant made too little progress. Instead, the court quoted the therapist incompletely and presented only the negative comments about appellant's parenting skills. The court did not address appellant's testimony in which she seemed to explain appropriate disciplinary techniques or her testimony that L.S.V. is now at an age at which she would not discipline him physically regardless of her general ideas about discipline.

There are evaluations in the record that pertain to the question of whether the case-plan components were germane.[4] The court did not adopt portions of those evaluations to explain why the case-plan components were necessary to correct the conditions that first prompted public intervention. The case plan invited failure by making completion of therapy necessary for the return of her child, and the court did not wrestle with the core question of whether appellant's efforts failed to correct the conditions.

The grave danger in these incomplete and conclusory findings is that the court will find merely "no compliance with the case-plan" without finding that these fail-

---

4. Barbara Belzer noted in her parenting-evaluation summary that given the cultural context of the pattern of abuse of L.S.V., E.V. needed "to adopt a new way of thinking about [L.S.V.'s] development." Dawn Bove noted in her parenting-evaluation summary that E.V. needed to change her way of thinking in order "to more appropriately parent" L.S.V., and that individual therapy might help her to change.

ures demonstrate cause for terminating parental rights. We reverse and remand for the court to make findings of fact and conclusions of law that address the issues raised in this opinion.

### 2. Long-term Foster Care

Appellant contends that the trial court contravened the child's best interests when it failed to consider long-term foster care without termination. When the court determines that termination of parental rights is not appropriate, the court's ability to place the child in long-term foster care is governed by section 260C.201. Minn. Stat. § 260C.312 (2000).[5] Section 260C.201 prohibits long-term foster care for children under the age of 12. Minn. Stat. 260C.201, subd. 11(e)(3)(i) (2000).[6] The age restriction reflects a policy determination that children should be placed in permanent homes and that foster care should be a temporary solution only.[7] The Minnesota Supreme Court addressed the issue of whether the age requirement conflicted with the best interests of the child. *In re Welfare of J.M.*, 574 N.W.2d 717, 722 (Minn.1998). The court found no conflict and that canons of statutory interpretation barred the court from ordering "a statutorily-prohibited placement." *Id.* Because L.S.V. is only 10 years old, the court did not err by failing to consider long-term foster care without termination of appellant's parental rights because the law as currently developed prohibits this option.

Appellant asks us to find cause to act in contradiction to the statute. *J.M.* may represent a departure from the su-

preme court's historic stance in favor of using equitable powers to order a statutorily prohibited placement, but it does not appear that the *J.M.* court was asked to consider the power of the court acting in equity in child-welfare matters. In an early case, Justice Cardozo stated the equity court has inherent power to order a statutorily prohibited remedy in the best interests of the child. *Finlay v. Finlay*, 240 N.Y. 429, 148 N.E. 624, 625–26 (1925). Minnesota courts have invoked their inherent power to grant equitable relief "as the facts in each particular case and the ends of justice may require." *Johnston v. Johnston*, 280 Minn. 81, 86, 158 N.W.2d 249, 254 (1968); *see also DeLa Rosa v. DeLa Rosa*, 309 N.W.2d 755, 758 (Minn. 1981) (finding district court has inherent power in family law cases to grant relief as facts and equities require); *State ex rel. Flint v. Flint*, 63 Minn. 187, 189–90, 65 N.W. 272, 273 (1895) (holding statutory mandate that custody be awarded to the father did not prohibit court's decision to place the child with its mother); *Kimmel v. Kimmel*, 392 N.W.2d 904, 908 (Minn. App.1986) (finding court had equitable power to disregard statutory procedure when child's welfare in jeopardy), *review denied* (Minn. Oct. 29, 1986). *C.f. Dobrin v. Dobrin*, 569 N.W.2d 199, 201 (Minn. 1997) (stating "each marital dissolution proceeding is unique and centers upon the individualized facts and circumstances of the parties and that, accordingly, it is unwise to view any marital dissolution decision as enunciating an immutable rule of law applicable in other proceeding"). In-

---

**5.** The legislature has added to this provision but not deleted the reference to section 260C.201. *See* 2001 Minn. Laws ch. 178, art. 1, § 37.

**6.** The legislature's recent changes to the statute do not alter this rule. *See* 2001 Minn. Laws ch.178, art. 1, § 22.

**7.** *E.g.,* Sen. Jane Ranum, *Minnesota's Permanency and Concurrent Planning Child Welfare System,* 26 Wm. Mitchell L.Rev. 687, 693–96 (2000).

fringing on the court's equitable powers can violate separation of powers. *Holmberg v. Holmberg*, 588 N.W.2d 720, 725–26 (Minn.1999) (finding statutory process violated separation of powers by infringing on court's original, equitable jurisdiction in family law).

Appellant also contends that termination is not in L.S.V.'s best interests because they share a bond of love and affection for each other. If this fact is shown, it must be determined if it is offset by other best interests considerations. Because we are remanding the case for further findings on the question of statutory grounds for termination, we decline to weigh the importance of L.S.V.'s bond with appellant in this case.

Appellant also contends that the county failed to investigate potential relative placements. But the county attempted unsuccessfully to place L.S.V. with relatives and appellant did not cooperate with the county to provide names of other relatives who would be willing to take care of L.S.V.

### DECISION

The trial court's findings did not address the core issue of the case: whether appellant's efforts and failure to follow through completely with the case plan were a failure to correct the conditions that led to the out-of-home placement. Upon remand, it remains within the trial court's discretion whether to open the record for the presentation of additional evidence.

**Reversed and remanded.**

SCHUMACHER, ROBERT H., Judge (dissenting).

I respectfully dissent. As the trial court stated in finding of fact 13.0, mother "has been unwilling to meet [L.S.V.'s] basic needs and her actions say (loud and clear) that she does not want her son returned to her home." The record readily supports

the trial court's conclusion that termination of parental rights is in the best interests of L.S.V. The majority nonetheless faults the trial court for not specifically detailing why mother's continued compliance with the court-ordered case plan is necessary to correct the conditions that led to the initial removal. Such a critique only serves to further delay the final resolution of this case.

Minn.Stat. § 260C.201, subd. 11 (2000), requires that the trial court hold a permanency hearing within 12 months of out-of-home placement for children over the age of eight. The dispositions available to the trial court are (1) reunification; (2) transfer of legal custody to a relative; (3) long-term foster care; or (4) termination of parental rights. Minn.Stat. § 260C.201, subd. 11(e). In this case, L.S.V. has been in out-of-home placement since April 1999, over two and a half years. As counsel for the guardian ad litem stated in his appellate brief: "Every day spent in reunification past the 12–month timeline is another day lost for finding a permanent home for this child." The focus in this case should be on L.S.V.'s need for permanency, not on the trial court's findings.