## ELLEN CROWLEY v. GERTRUDE FARLEY.[1]

June 4, 1915.

Nos. 19,109—(64).

**Will — right of beneficiary to contest later will — burden of proof.**

1. A beneficiary under a prior will of a testator has the right to contest the probate of a subsequent will which, if allowed, would take away or lessen the interest of such beneficiary, providing there is sufficient proof of the due execution and validity of the prior will. The burden of the proof in this respect is upon the contestant, but it is not necessary to probate the prior will or offer it for probate, or in all cases to make the formal proof necessary for the admission of a will to probate. Where the prior will, apparently executed and attested according to law, is received in evidence without objection and the signature and mental capacity of the testator is proved, this is sufficient proof, in the absence of evidence to the contrary, to warrant a finding that the prior will was legally executed and attested, and that a beneficiary thereunder has the right to contest the subsequent will.

**Findings of court.**

2. It is not necessary for the court in a will contest to make a specific finding of the facts upon which the right of the objector to contest the will depends.

**New trial.**

3. It was not error in this case to deny a motion for a new trial made on the ground of newly discovered evidence.

**Evidence of mental incompetence.**

4. The evidence is sufficient to sustain the finding of the trial court to the

[1] Reported in — N. W. —.

Note.—As to what constitutes testamentary capacity or incapacity, see note in 27 L.R.A. (N.S.) 2.

effect that the testator, at the time the subsequent will was executed, was mentally incompetent to make a will.

**Admission of evidence.**

5. There was no error in the admission of certain evidence.

To the petition of Ellen Crowley for the admission to probate of the last will and testament of Edward Lawrence, deceased, Gertrude Farley filed objections. From the order of the probate court for Hennepin county allowing the will, Gertrude Farley appealed to the district court for that county. The appeal was heard by Dickinson, J., who made findings and reversed the order of the probate court. From the judgment entered pursuant to the order for judgment, Ellen Crowley, as administratrix with the will annexed, appealed. Affirmed.

*John L. Erdall* and *Leonard T. Erdall,* for appellant.
*Koon, Whelan & Hempstead,* for respondent.

BUNN, J.

Edward Lawrence died May 4, 1913, at the home of his daughter, Ellen Crowley, in Minneapolis. A will executed May 3, 1913, was offered for probate and admitted over the objections of the contestant, Gertrude Farley. An appeal was taken to the district court where there was a trial *de novo* and a decision in favor of the contestant reversing the action of the probate court. From the judgment entered on this decision Ellen Crowley, as administratrix with the will annexed, appeals to this court.

The questions in the court below were: (1) As to the right of Gertrude Farley to contest the will; (2) whether Lawrence had testamentary capacity; (3) whether there was undue influence. The trial court held that Gertrude Farley had the right to contest the will, and found as facts that Lawrence did not have sufficient mental capacity to make a will, and that it was procured by undue influence. The chief questions for our decision are these: (1) Did Gertrude Farley have the right to contest the will of Lawrence? (2) Is either finding of fact sustained by the evidence?

Gertrude Farley was not related by blood to Edward Lawrence and would take nothing if he had died intestate. She was a granddaughter of Lawrence's wife. Her only right to be heard is by virtue of the fact that she was a beneficiary under a prior will of Lawrence, which would be his last will in case the contest succeeded. There is no question that this gave Miss Farley the right to contest the subsequent will, providing sufficient proof is furnished of the validity of the prior will. The point made here is that this proof was not furnished. It is true, in our opinion, that the burden was upon the objector to prove her right to contest. It is not contended that it was necessary to make this preliminary proof before the court took up the merits of the contest; the claim is that at no time during the trial was the right to contest proved. The question is as to the correctness of this contention.

In her objections to the probate of the will the contestant alleged that she was the beneficiary, to the extent of $250 and an undivided half interest in a lot, under "the instrument which she alleges to be the last will and testament of said Edward Lawrence." The answer of Mrs. Crowley, the proponent, was a general denial. On the trial in the district court, the proponent, before any evidence was taken, moved to dismiss the contest on the ground that Miss Farley was not an interested party. This motion was denied for the time being, and the trial proceeded on the merits. On the cross-examination of the proponent's first witness, the lawyer who drew both wills, it was brought out without objection that the will of October, 1912, was drawn by this lawyer under Lawrence's directions and mailed to him with instructions as to its execution. Within a few days the will came back to the lawyer, signed and witnessed, and it was retained by him until the second will was drawn, and used on this occasion as the basis of the new will, the testator indicating what changes he desired. During the cross-examination of this witness the will of October, 1912, was offered in evidence, and received without objection. It purported on its face to be duly signed by the testator and attested according to law. Later the signature of Lawrence to this will was proved to be genuine, but the attesting wit-

nesses were not called or their signatures proved. Nothing further was done by way of establishing the validity of this will, and no attempt was made to show it was invalid. It was not questioned that Lawrence had sufficient mental capacity at the time it was apparently executed, and incidentally the evidence showed that he had such capacity. Indeed, no point seems to have been made during the trial as to the sufficiency of the proof that the first will was valid.

We hold that the contestant made a *prima facie* case on the issue of the validity of the first will. The reception of the instrument in evidence without objection, with proof of the signature of the testator, and of his mental capacity, together with the apparent assumption by everybody that the October will was properly executed and valid, sufficed in our judgment to establish Miss Farley's right to contest, in the absence of any evidence to the contrary. It was not necessary for the contestant to offer the first will for probate, or to have it probated. Indeed it could not well be admitted to probate until the subsequent will was set aside. See In re Langley's Estate, 140 Cal. 126, 73 Pac. 824; Ruth v. Krone, 10 Cal. App. 770, 103 Pac. 960; Kostelecky v. Scherhart, 99 Iowa, 122, 68 N. W. 591; 40 Cyc. 1230, 1243.

As to the claim that it was error not to 'make a specific finding of the facts upon which the right to contest depended, we hold that this was unnecessary. The court necessarily determined these facts and that Miss Farley had the right to contest when it reversed the judgment of the probate court.

We may notice here the claim of newly discovered evidence bearing on the question whether the first will was properly attested. There was no abuse of discretion in denying a new trial on this ground. It is doubtful whether the affidavits in support of the motion do not prove a legal attestation, instead of the contrary, but in any event no sufficient excuse is shown for not producing the evidence on the trial.

This brings us to the merits. The trial court, as before stated, found a lack of testamentary capacity and also undue influence. If

either finding is sustained by the evidence, the will was properly re-fused probate, and the judgment appealed from should be affirmed.

The evidence bearing on the mental capacity of Lawrence at the time the will was executed may be summarized as follows: He was 69 years' of age, and for six months prior to his death was affected with chronic sugared diabetes, and a bronchial affection; during the last month and a half he was confined to his room in the home of his daughter, Mrs. Crowley, where he usually rested in a reclining or half reclining position on two chairs. About five weeks prior to his death, a specialist in nervous and mental diseases was called in con-sultation with Lawrence's regular physician and examined the pa-tient. Mrs. Crowley admitted that the reason for calling in this specialist was to enable her to prove, in case her father made a will in favor of Miss Farley and her sister, that he was not in proper mental condition to make a will. The specialist made a report of the result of his examination to Dr. Crowley, but this letter had been destroyed; it was testified that he found Lawrence suffering from "senile degeneration" or decay of the nervous system and breaking down of the brain structure which would progress and end with death. Two days before his death, and on the evening before the will was executed, Miss Farley and a friend called upon Lawrence. He asked Miss Farley to go the next day to the attorney in whose custody his will was, and have him change a $500 bequest from the beneficiary, a niece, to his daughter. She promised to do so. There was some other conversation at this time, but we regard it as having no particular bearing on the mental condition of Lawrence. He was undoubtedly a very sick man physically and his dissolution was near. A few minutes after these girls left, Dr. Crowley, at the request of Lawrence, as the testimony is, telephoned the attorney to come to the house, as he wished to change his will. He came the next even-ing. Lawrence was reclining propped up in a morris chair or in two chairs and he twice asked the attorney, Mr. Hostetler, if Gertie, (Miss Farley) had been to see him, and was told she had not; he told Hostetler that he wanted to make some changes in his will; Hostetler had the old will with him and read it to Lawrence section

by section; as he read the old will Lawrence indicated what changes he wanted by saying "cut that out" when the provision for Miss Farley was read and the same words when Hostetler came to the provisions for Bessie Savage and Clara Allen. By the new will part of these bequests went to Mrs. Crowley and the balance to a grandson. When Hostetler had completed writing the new will, he read it over to Lawrence, asked him if it was what he wanted and Lawrence nodded his head. The instrument was then presented for his signature; a pen was put in his hand and the testator made an effort to write his name; he would write and then stop, as if forgetting the next letter; it would be told him by somebody in the room, and, after several promptings of this kind, the signature was finally completed; after the final "e" was written, the hand went on in an irregular way towards the top of the page; the result bore no resemblance to the signature of Lawrence, and though counsel says it is "decipherable," we have been quite unable from our inspection of the scrawl to agree to this statement. Two young men had been called in as witnesses, and attested the will. Mr. Hostetler gave it as his opinion that Lawrence was competent and of sound mind at the time he executed the will. The witnesses did not give their opinions as to the testator's competency though one of them said he noticed nothing to make him think he was out of his head or did not know what was going on. They did realize that Lawrence was very ill and weak; he did not speak to them, though they were well acquainted; his eyes were "drooped down," and he was not heard to utter a sound while the witnesses were in the room.

Lawrence died about noon on the day after the will was executed. He was walking with assistance across the room when he suddenly collapsed and died within two or three minutes. The specialist who had made the examination of Lawrence in March gave his opinion, based on the facts as to the testator's condition at the time he executed the will and the attendant circumstances, that his mental condition was "dulling and weakness and more or less lack of comprehension." The attending physician of the deceased visited him last five or six days before he died; he noticed nothing then or before indi-

129- M.—30.

cating unsoundness of mind. Several lay witnesses gave their opinions that Lawrence was sound in mind, though few saw him during the days immediately preceding his death.

It is a case, in our opinion, where a finding either way by the trial court would have to be sustained. No sufficient reason appears for the testator cutting from his will the small bounties to Miss Farley and her sister. He was clearly near death when he did this and in a very weak physical state. The appearance of his signature and the evidence of the manner of its writing indicate something more than palsy. We appreciate that the mere physical act of signing the will is not of controlling importance, that it would be a good signature, no matter how fantastic or illegible, if the signer had mental capacity. We are mindful too that mere mental and physical weakness caused by old age or sickness does not amount to mental incapacity if the testator be capable of understanding and carrying in his mind the nature and situation of his property and his relations to those who would naturally have some claim to his remembrance. But it is nevertheless true that a low physical condition, particularly in certain diseases, is often the cause of decay of the mental powers. On the entire evidence, expert and nonexpert, all of which we have carefully considered, we must hold that the finding of the trial court on this issue cannot be disturbed.

It is unnecessary to decide whether the evidence supports the finding of undue influence, the conclusion that the will should be refused probate following from the finding of mental incapacity.

We find no error in permitting Dr. Crafts to answer the hypothetical questions asked him.

Judgment affirmed.