## IN RE ESTATE OF ELIZABETH J. WAGGNER, ALSO KNOWN AS E. J. HATCH.[1]

July 15, 1927.

No. 26,152.

**On appeal from allowance of will by probate court trial in district court is de novo.**

1. On an appeal from an order of the probate court admitting a will to probate, the question whether the will is entitled to probate is to be tried de novo in the district court, and the burden is on the proponent to prove that the testator possessed testamentary capacity.

**When failure to make findings of fact may be deemed waived.**

2. Where issues of fact are tried it is the duty of the court to make findings of fact as in other cases, but failure to do so may be deemed waived where the decision necessarily decided the disputed fact.

**Evidence insufficient to justify finding testatrix was mentally competent.**

3. The evidence will not justify a finding that the testatrix was mentally competent to make a will at the time the instrument in controversy was executed.

Trial, 38 Cyc. p. 1954 n. 16; p. 1957 n. 33.
Wills, 40 Cyc. p. 1021 n. 12; p. 1023 n. 29; p. 1272 n. 58; p. 1341 n. 27; p. 1356 n. 49, 53, 54.

See note in 27 L.R.A.(N.S.) 2; L. R. A. 1915A, 777; 28 R. C. L. 86; 4 R. C. L. Supp. 1799; 6 R. C. L. Supp. 1703.

Charles A. Dahlgren, devisee under the first will of the testatrix, appealed from a judgment of the district court for Ramsey county, Orr, J., admitting to probate a second will. Reversed.

*Bjorklund & Andre,* for appellant.

*H. P. Churchill* and *O. A. Blanchard,* for respondent.

[1]Reported in 214 N. W. 892.

TAYLOR, C.

This is an appeal from a judgment of the district court affirming a judgment of the probate court admitting to probate the will of Mrs. E. J. Hatch.

[1] Appeals from the probate court are tried de novo in the district court. G. S. 1923, § 8988; Dun. Pr. L. § 68. Where the question is whether a will shall be admitted to probate, the burden is on the proponent to prove that it was executed in the manner required by statute and that the testator possessed testamentary capacity at the time he executed it. In re Layman's Will, 40 Minn. 371, 42 N. W. 286; Kennedy v. Kelly, 123 Minn. 259, 143 N. W. 726; Bush v. Hetherington, 132 Minn. 379, 157 N. W. 505.

[2] Where issues of fact are presented, it is the duty of the trial court to make findings of fact and conclusions of law as in other cases tried by the court. Swick v. Sheridan, 107 Minn. 130, 119 N. W. 791; First Nat. Bank v. Towle, 118 Minn. 514, 137 N. W. 291. Here the court made no findings whatever, but simply ordered, "that the judgment of the probate court be and the same is hereby affirmed, and said appeal dismissed." Affirming the judgment and also dismissing the appeal is inconsistent. Blandin v. Brennin, 106 Minn. 353, 119 N. W. 57. However, the cause was tried on the merits, no dismissal was asked for and no reason for a dismissal appears. As said in the case cited, the order of dismissal was doubtless an inadvertence and may properly be rejected as surplusage.

Findings should have been made, but there was no request to make them, and only a single issue was litigated, namely, whether the testatrix possessed the mental capacity to determine for herself the disposition to be made of her property and to comprehend the purport and effect of the instrument she executed. As the will could not be sustained without deciding that issue, the order and judgment of the district court necessarily decided it, although that court seems to have thought it did not. To remand the cause for proper findings where it is obvious that the controversy narrowed down to the single question of testamentary capacity, and that the decision of the lower court necessarily decided that question, would

cause useless delay and expense. Under such circumstances no prejudice can result from the lack of findings, and the failure to make them may be deemed to have been waived. Swick v. Sheridan, 107 Minn. 130, 119 N. W. 791; Wood v. Wood, 137 Minn. 252, 163 N. W. 297.

The proponent urges here that the objections to the will, filed in the probate court, did not allege lack of mental capacity to make it, and that the question of testamentary capacity was not before the district court for that reason.

Although its jurisdiction is appellate, the district court does not review the proceedings in the probate court to determine whether that court reached the correct conclusion, but tries the cause de novo as if commenced in the district court. The issues for determination are the same as they were in the probate court, but are to be determined from the evidence presented in the district court without regard to the trial in the probate court or the conclusions reached by that court. Strauch v. Uhler, 95 Minn. 304, 307, 104 N. W. 535; Benz v. Rogers, 141 Minn. 93, 169 N. W. 477; Lipman v. Bechhoefer, 141 Minn. 131, 169 N. W. 536; Dun. Pr. L. § 68. It was incumbent on the proponent to prove testamentary capacity at the trial in the district court the same as in the probate court, even if the objections did not raise that question. Moreover that issue was not only litigated by consent, but was the single issue to which both parties directed their evidence. Furthermore objections are not required to comply with the rules of pleading, nor to be in any particular form, and the objection that the "instrument was not duly executed by the said Mrs. Hatch as her last will and testament" may properly be deemed sufficient to admit proof that when it was executed her condition was such that she was not conscious of the fact that she was executing such an instrument.

[3] The question presented is whether the evidence will justify a finding that Mrs. Hatch knowingly and consciously executed this instrument as her last will and testament. She was 88 years of age at the time of her death. Her husband had died many years before, and she had no children and no relatives so far as known. Her property consisted of two lots in the city of St. Paul on which are

two houses—a small one in which she resided, and a larger one which she rented. Two wills purport to have been executed by her —the first on March 10, 1925, the second on March 13, 1925, three days later. The second is the one in controversy. The first left all her property to Charles A. Dahlgren, the contestant, now 50 years of age, whom she had known ever since he was a small boy and who, from time to time, had performed various services for her as a matter of friendship. The second will left the small house to Mary R. Cain, an intimate friend, now 73 years of age, whom she had known for more than 60 years, and the larger house to St. Columba's Catholic Church for the benefit of its school.

Dahlgren as devisee under the first will contests the second. To entitle him to maintain the contest it was necessary to make a prima facie showing that the first will was valid unless superseded by the second. Crowley v. Farley, 129 Minn. 460, 152 N. W. 872. Evidence was presented by both parties for the purpose of showing the circumstances under which, and the manner in which, both wills were executed, and the mental condition of the testatrix at the time they were executed.

Dr. Eshelby, who had known Mrs. Hatch for about 20 years and attended her during her last illness, was called as a witness by the contestant. The doctor says that the original disease was bronchial pneumonia and myocarditis, and that a thrombosis developed in the cerebral blood vessels. He saw her on March 7, 11, 13 and 15, and she died on the morning of March 16. On the 7th there were no symptoms of the cerebral trouble. On the 11th that had developed, and "she showed a very marked comatose condition." Asked whether her condition on the 13th was such that she understood what was going on around her, he answered: "No. She could be aroused by stimulants, very loud speaking or shaking, she could be aroused slightly so that she would give some kind of an answer, or some indication she was being disturbed, but she was unable to carry on any conversation at that time." The doctor further stated that in his opinion she was not conscious of her relations to the outer world, that she might give answers to questions, but that such

answers would be the result of suggestion and without any intelligent comprehension of their meaning. This applied to her condition on the 11th and thereafter. He was asked if in his opinion she had sufficient intelligence on the 10th to make a will. He said he could not speak from personal knowledge, but was told by her attendants that her condition on the 10th was the same as on the 11th, and if that were true she was not capable of making a will. Dr. Eshelby was the only physician called as a witness. According to his testimony Mrs. Hatch was not able to comprehend what was taking place about her and was not mentally capable of making a will at any time after the development of the thrombosis in the blood vessels of the brain.

Mrs. Wintheiser, Mrs. Dahlgren, and Mrs. Ball, a daughter of Mrs. Cain, were with Mrs. Hatch almost continuously during the latter part of her illness, but Mrs. Dahlgren was away at her own home on March 13. Early in the afternoon of March 13, Frank A. Low, an old friend of Mrs. Hatch, came to see her. A little later Father Casey came and was with her for about 20 minutes and then left. No others were present while he was with her and he was not a witness. Mrs. Moore, a neighbor, who had known her for several years, came in. Those then present were Mrs. Wintheiser, Mrs. Ball, Mrs. Moore, and Mr. Low. Mr. Low asked the others if Mrs. Hatch had made a will and was told that she had made one two or three days before. He said that she ought to make a will. He says he knew nothing about the contents of the first will, and why he thought she ought to make another does not appear. After some conversation with the others present, he says he asked Mrs. Hatch if she wanted to make a will and that she answered, "yes." Mrs. Ball telephoned to a lawyer who came and the will in controversy was drawn. Who furnished the information as to the disposition to be made of the property does not appear, but the record clearly shows that it was not furnished by Mrs. Hatch. According to the witnesses, she was asked if she wanted to make a will and answered in the affirmative. While the will was being drawn she was asked questions to which she expressed her assent, sometimes by the word

"yes," more often by a nod or motion of her head. After the will was written it was read to her and the witnesses say she expressed her assent to it, but are vague and uncertain as to the manner in which she did so. If she spoke at all it was no more than the words "all right." Her signature is a mark in this form "X." The witnesses say she held the pen in her hand, but do not remember whether anyone held her hand and guided it in making the mark. Mrs. Wintheiser, Mrs. Moore, and Mr. Low signed the will as witnesses at the request of the attorney. Mrs. Wintheiser says that Mrs. Hatch indicated by a motion that she should sign it.

We find nothing in the record indicating any act by Mrs. Hatch, of her own volition, in respect to the preparation or execution of this will. She simply assented to various suggestions made to her, without at any time saying or doing anything of her own accord. This is exactly the conduct which the doctor states would naturally follow from the condition produced by the thrombosis—acts which he states she would perform without comprehending their meaning or the matter to which they related. The witnesses say that they think she understood the will when it was read to her, but none of them say that she gave any instructions concerning the contents of the will or said anything whatever as to the disposition she desired to make of her property.

As said in Schleiderer v. Gergen, 129 Minn. 248, 152 N. W. 541, a person unable to understand the nature and importance of the business she is transacting without being prompted is unable to make a will. The evidence will not justify a finding that Mrs. Hatch comprehended what was taking place when she executed this instrument, nor that she executed it knowing and understanding the disposition she was making of her property.

It may be, as intimated by the trial court, that the mental capacity of the testatrix was better when the second will was made than when the first was made, but this record fails to show sufficient mental capacity to execute either. The first has not been presented for probate and the question as to its validity is not for determination herein.

Judgment reversed.