IN RE WELFARE OF TERRI DAWN FORREST.

246 N. W. 2d 854.

October 29, 1976—No. 45933.

*Keith M. Brownell,* County Attorney, and *Thomas Sjogren,*

Assistant County Attorney, for appellant.

*John Fillenworth,* County Public Defender, for respondent.

Heard before Todd, MacLaughlin, and Marsden, JJ., and considered and decided by the court en banc.

MACLAUGHLIN, JUSTICE.

The St. Louis County Welfare Department appeals from a judgment of the district court denying a petition to terminate the parental rights of Donald Forrest to his daughter, Terri Dawn Forrest. The district court reached this judgment after a trial de novo held pursuant to an appeal brought by both the natural mother, Annette Forrest, and the father from a final order of the juvenile court terminating the parental rights of both parents.[1] No appeal has been taken from that portion of the district court judgment affirming the termination of the parental rights of the mother. Neither has any appeal been taken from the district court's conclusion that the "best interests of the child" require that she remain in long-term foster care in the home of foster parents under the legal custody of the county welfare department. Because we have concluded that the district court's findings are unclear with respect to the pertinent question of whether Donald Forrest will ever again be able to assume adequately the responsibilities of a custodial parent, we remand this matter for further consideration in the district court.

After a 23-year marriage Donald Forrest was divorced from his first wife in 1968. In the 2 years following his divorce Donald, who had first declared himself an alcoholic in 1948, drank heavily. As a consequence, he lost his job with the city of Hibbing and was hospitalized at Moose Lake State Hospital. While in Moose Lake State Hospital in 1970, Donald met

---

[1] Subsequent to the proceedings in this case the St. Louis County probate-juvenile court was transformed by statute into a county court. L. 1973, c. 679. Appeals from county court to district court are now confined to the record before the county court unless the presiding judge at county court is not learned in the law. Minn. St. 487.39.

Annette, who was also there for the treatment of alcoholism. After their release from the hospital the two began living together and continued to drink excessively. Both Annette and Donald acknowledged that they had a "severe drinking problem" during this period. Both were committed for treatment as alcoholics by the St. Louis County probate court in March 1971, being provisionally discharged in August 1971, and Donald returned to Moose Lake State Hospital on one occasion for further treatment.

In September 1971 Annette and Donald were married. Five months later Terri Dawn Forrest was born on February 10, 1972, in Duluth. The infant was premature and weighed 4 pounds, 2 ounces at birth. She remained in the hospital until March 5 when she was released to her parents. Fifteen days later a petition was filed by a social worker alleging Terri was a dependent child due to the excessive drinking of both her parents, and Terri was immediately removed to a foster home. On March 29, after a hearing, Terri was formally adjudicated a dependent child and temporary legal custody of Terri was transferred to the county with placement in a foster home. At the hearing both parents acknowledged their inability to care for Terri when drinking excessively. On May 19, legal custody of Terri was restored to Annette and Donald under the protective supervision of the county welfare department on the condition that they rehabilitate themselves from their drinking problem. As part of this rehabilitation effort Donald went to Minneapolis to participate in a program of the Division of Vocational Rehabilitation (DVR).

On June 2, 1972, due to Annette's heavy drinking and Donald's absence, Terri was again removed to a foster home by the county and Annette was subsequently hospitalized at Moose Lake State Hospital. Donald meanwhile was admitted to the Detoxification Center in Minneapolis for one night in July 1972 due to excessive drinking. Upon completing the DVR program Donald returned to Duluth in August and began working for

the park department. Less than 2 months later he lost this job due to excessive drinking and was readmitted to Moose Lake State Hospital.

On July 24, 1972, the county filed a petition seeking termination of the parental rights of both Donald and Annette. After several continuances, a hearing was held on the petition in juvenile court in February 1973. In May 1973 an order was entered terminating the parental rights of Donald and Annette based on findings:

(1) That the parents have a drinking problem which they cannot control;

(2) that the parents have been repeatedly admitted to detoxification centers;

(3) that the parents have demonstrated they are not able to provide Terri with proper care and treatment; and

(4) that the best interests of the child would be served if parental rights were terminated so that the child would become available for adoption.

The juvenile court concluded that grounds for termination existed under Minn. St. 260.221(b)(5) in that the child has been adjudicated dependent and reasonable efforts to rehabilitate the parents under the direction of the court had failed to correct the cause of Terri's dependency.[2]

Both parents appealed this termination order to the district court pursuant to Minn. St. 260.291, subd. 2(b), which provides for trial de novo. On November 8, 1974, about 17 months

---

[2] Minn. St. 260.221(b)(5) provides:

"The juvenile court may, upon petition, terminate all rights of parents to a child in the following cases:

\* \* \* \* \*

"(b) If it finds that one or more of the following conditions exist:

\* \* \* \* \*

"(5) That following upon a determination of neglect or dependency, reasonable efforts, under the direction of the court, have failed to correct the conditions leading to the determination \* \* \*."

after the juvenile court order was entered, the de novo hearing was held with both parents offering testimony of their behavior since the juvenile court hearing. The district court took the county's objection to this testimony under advisement and admitted the testimony. At the time of the de novo hearing Annette was again in Moose Lake State Hospital undergoing long term treatment for alcoholism. During the preceding months she had been drinking excessively and had been in and out of the Duluth Detoxification Center numerous times. The district court found there to be clear and convincing evidence to support the finding that Annette's parental rights be terminated pursuant to Minn. St. 260.221(b)(5).

At the de novo hearing Donald testified that during the previous 13 months he had abstained from drinking, had become gainfully employed in the kitchen of the Duluth Detoxification Center, and was rehabilitating himself. Donald admitted that in September 1973 he drank to excess on one day and was admitted to the Duluth Detoxification Center. He testified he has not drunk at all since then.[3] The district court ruled this new evidence to be admissible and determined that in view of this evidence of rehabilitation the parental rights of Donald Forrest should not be terminated.

After two stays in short term foster homes, Terri Dawn Forrest has remained in the foster home of Mr. and Mrs. Ronald Running since October 1972. Terri's physical development was initially retarded in the sense that she was not fully developed, and she was unresponsive as an infant. While under the Runnings' care, Terri has required two eye surgeries, physical therapy on her knee and leg, and in the future will require orthodontic care because of the small size of her jaw. Terri's physical development of late has been remarkable and Mrs. Running testified that Terri is now "almost normal for her age." Mrs. Running testified that she and her husband are will-

---

[3] Donald and Annette were divorced on September 3, 1974.

ing to either provide long term foster care until Terri reaches majority or to adopt the child, whichever is available. They have attempted to encourage a relationship with the natural parents who visited Terri occasionally until the juvenile court issued the order terminating their parental rights in May 1973.

The threshold issue in this case is whether the district court judge in conducting the de novo hearing pursuant to Minn. St. 260.291, subd. 2(b), erred in admitting and considering evidence of Donald Forrest's conduct in the 17 months which elapsed between the juvenile court hearing and the district court hearing. On several occasions we have ruled that on de novo appeals from probate court to district court the latter should try the case anew as if the action had been originally commenced in that court and with the aid of all the evidence then available. Benz v. Rogers, 141 Minn. 93, 169 N. W. 477 (1918); In re Estate of Waggner, 172 Minn. 217, 214 N. W. 892 (1927); In re Estate of Turner, 181 Minn. 528, 233 N. W. 305 (1930). In particular, new facts developing after the trial in the probate court may be received in evidence in the district court if pertinent to the issue. Strauch v. Uhler, 95 Minn. 304, 104 N. W. 535 (1905). Believing, as we do, that the same rule should apply to de novo appeals to district court from juvenile court as that applied to de novo appeals from probate court, we are persuaded that the evidence of Donald Forrest's sobriety and efforts at rehabilitation in the 13 months preceding the district court hearing was properly admitted by the district court.

The significant issue presented in this case is whether, in view of the evidence before the district court, it erred in refusing to terminate the parental rights of Donald Forrest. The county welfare department petitioned to terminate Donald's parental rights on the theory that Terri had been adjudicated dependent in March 1972 and "reasonable efforts, under the direction of the court, have failed to correct the conditions leading to the determination" of dependency. Minn. St. 260.221 (b)(5). The district court ruled that in view of Donald's

recent sobriety he had corrected the condition which originally led to the finding of Terri's dependency and thus his parental rights should not be terminated. The district court also ruled, however, that Donald was not prepared to assume custody of Terri and stated "because of his age and past history, this Court doubts if he will ever be able to assume the care and custody of his child. This fact does not justify the court in terminating his parental rights." The district court judge also found:

"18. That while the evidence presented does not justify a termination of the parental rights of Donald Forrest to his daughter, Terri Dawn, neither do the facts indicate that he is presently in a position to meet the needs of said child nor that he will because of age and marital situation, be in such a position within the foreseeable future. That further because of the lack of visitation that has occurred, there is not the strong relationship between father and daughter which normally exists. That in fact the child has built bonds of affection with her foster parents which would foreseeably arise out of the long and stable care which she has received from them.

"19. That the best interest of Terri Dawn Forrest require that she be allowed to remain in long-term foster care in the home of Mr. and Mrs. Ronald Running who have demonstrated to the Court that they have provided the only stable environment that the child has ever known and who have indicated that they would be willing to either adopt or permanently care for the child."

We believe that these findings are unclear on the crucial issue of whether Donald Forrest will be able to provide proper care for Terri and become a suitable custodial parent. On the one hand, the court expresses doubt that Donald will ever be able to assume the care and custody of Terri, while on the other the findings state he will not be in such a position "within the foreseeable future." Accordingly, we believe this case must be re-

manded for the taking of further evidence on this point and for an explicit finding on this difficult question of fact.

If on remand the district court concludes that, while Donald has regained sobriety, he remains permanently unable to care for his daughter, then in our view the best interests of Terri require that Donald's parental rights be terminated so that the Runnings may adopt Terri and establish lasting bonds of affection with her, and provide the type of stable home life which would surely be most beneficial to her. If, on the other hand, the evidence indicates that Donald's rehabilitation and living circumstances are such that he is, or within a foreseeable time will be, able to provide the type of care which a young girl of Terri's age requires, then the district court should decline to terminate Donald's parental rights and should establish a supervised plan whereby custody of Terri can gradually be transferred from the Runnings to Donald with whatever counseling and assistance may be appropriate.

Remanded for proceedings consistent with this opinion.