*This opinion is nonprecedential except as provided by
Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A25-0716**

In the Matter of the Welfare of the Child of: M.C., Parent.

**Filed November 17, 2025
Affirmed
Cochran, Judge**

Hennepin County District Court
File No. 27-JV-24-2721

Anne Morris Carlson, Anne M. Carlson Law Office, PLLC, St. Paul, Minnesota (for appellant M.C.)

Mary F. Moriarty, Hennepin County Attorney, Britta Nicholson, Assistant County Attorney, Minneapolis, Minnesota (for respondent Hennepin County Human Services and Public Health Department)

Maureen Menikheim, Minneapolis, Minnesota (guardian ad litem)

Considered and decided by Bjorkman, Presiding Judge; Cochran, Judge; and Cleary, Judge.[1]

**NONPRECEDENTIAL OPINION**

**COCHRAN**, Judge

On appeal from the termination of her parental rights, appellant-mother challenges the district court's determinations that respondent-county made reasonable efforts to

---

[1] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

reunite her with the child, that termination is supported by a statutory basis, and that termination is in the best interests of the child. We affirm.

## FACTS

This case concerns the termination of appellant-mother M.C.'s parental rights to her child, F.R.C., born in 2021.[1] The following summarizes the district court's findings of fact in its order terminating parental rights as well as the procedural history, and is supplemented by the record, as necessary, to understand the issues on appeal.

In February 2021, following the child's birth, respondent Hennepin County Human Services and Public Health Department (the county) received a report that the child may have had prenatal exposure to drugs and that mother had a prior termination of parental rights to another child. In October 2021, the county filed a petition to open a child-in-need-of-protection-or-services (CHIPS) case for the child. The district court adjudicated the child CHIPS in January 2022, and the child was removed from mother's home and placed with relatives. The county filed a petition for termination of parental rights (TPR) in October 2022. Following a three-day trial, the district court involuntarily terminated mother's parental rights in June 2023.

Mother appealed the district court's decision. *See In re Welfare of Child of M.A.C.*, No. A23-1149, 2024 WL 323335, at *1 (Minn. App. Jan. 29, 2024). We reversed the order terminating mother's parental rights and remanded based on our conclusion that the district court clearly erred when it found that the county made reasonable efforts to reunify the

---

[1] F.R.C.'s father is not involved in this appeal. Mother also has other children, who are not part of the petition to terminate parental rights generating this appeal.

2

family. *Id.* at \*5. Our conclusion was focused on the lack of effort by the county to provide mother with a chemical-health assessment as required by her case plan. *Id.* at \*4-5. Our opinion instructed "the district court to supervise [the] child's juvenile-protection matter, including the county's provision of reasonable efforts to reunite the family." *Id.* at \*5. We also stated, "Nothing in this opinion shall be construed as an expression of our opinion on how the district court should resolve any future requests for relief." *Id.*

Following remand, the district court dismissed the county's 2022 TPR petition and the matter reverted to a CHIPS proceeding. The county was ordered to provide mother with an updated case plan and undertake reasonable efforts toward reunification. County social worker P.B. discussed a proposed case plan with mother in February 2024. The case plan required mother to: complete a chemical-health assessment and follow recommendations; abstain from mood-altering substances; demonstrate ongoing sobriety through random urinalysis (UA) testing; submit a baseline UA; complete a psychological evaluation and follow recommendations; participate in parenting education until she is able to demonstrate an ability to consistently meet the child's needs as identified by the child's providers; comply with recommendations from the child's services providers; maintain safe and stable housing; provide information about household membership to the county and allow the county to access the home; maintain contact with the county; remain law abiding; comply with probation and all criminal court orders, as applicable; and participate in visits with the child, as recommended by the child's therapist. The county submitted the proposed case plan to the district court in the spring of 2024.

3

Over the next several months, the county undertook efforts to provide services to mother and coordinate with mother on her case plan. During this time period, the district court denied mother's requests for visitation. The district court determined that visitation would not be in the child's best interests until mother demonstrated her sobriety (which she failed to do) and the child's therapist approved visitation (which did not occur).

In September 2024, after approximately seven months of working with mother on her case plan, the county filed a petition to terminate mother's parental rights to the child. The petition alleged that four statutory grounds for termination were met: (1) failure to comply with the duties imposed by the parent-child relationship; (2) palpable unfitness; (3) failure to correct the conditions that led to the child's out-of-home placement, despite reasonable efforts by the county; and (4) neglect of the child in foster care. *See* Minn. Stat. § 260C.301, subd. 1(b)(2), (3), (4), (7) (2024). The petition further asserted that the county put forth reasonable efforts to rehabilitate mother and reunify mother with the child and that termination was in the child's best interests.

The district court held a six-day trial at which the following witnesses testified: social workers F.L., A.R., M.M., K.S., and P.B.; a drug-testing director; a parenting educator; foster mother; mother; and the guardian ad litem (GAL). The district court also received into evidence over 100 exhibits.

In April 2025, the district court filed a written order terminating mother's parental rights to the child. Based on the testimony from the county's witnesses, which the district court found credible and persuasive, the district court concluded that the county proved by

clear and convincing evidence that the four statutory grounds for termination alleged in the petition were met.

The district court also concluded that the county made reasonable efforts to rehabilitate mother and reunify mother with the child, as required by statute. In making this determination, the district court credited testimony from the social workers regarding the specific efforts the county made to assist mother with the case plan and reunite the family. These efforts included, among others, regular outreach efforts to mother, referrals for a chemical-dependency evaluation and a psychological evaluation, a referral to a parenting-skills educator, referral to a peer-support program, measures to ensure that mother abstained from mood-altering substances through the use of UA testing and sweat patches, and meetings with mother to discuss case plan components. The district court also determined the termination was in the child's best interests. Consequently, the district court ordered the termination of mother's parental rights to the child.

Mother appeals.

**DECISION**

Parental rights may only be terminated "for grave and weighty reasons." *In re Welfare of M.D.O.*, 462 N.W.2d 370, 375 (Minn. 1990). To involuntarily terminate parental rights, a district court must determine that (1) the county has made reasonable efforts to rehabilitate the parent and reunify the family or such efforts were not required; (2) at least one of the statutory grounds for terminating parental rights exists; and (3) termination is in the child's best interests. Minn. Stat. §§ 260C.301, subds. 1(b), 7, 8

(2024); .317, subd. 1 (2024); *see also In re Welfare of Child. of S.E.P.*, 744 N.W.2d 381, 385 (Minn. 2008).

We review a district court's decision to terminate parental rights "to determine whether the district court's findings address the statutory criteria and whether the district court's findings are supported by substantial evidence and are not clearly erroneous." *S.E.P.*, 744 N.W.2d at 385. "A finding is clearly erroneous if it is either manifestly contrary to the weight of the evidence or not reasonably supported by the evidence as a whole." *In re Welfare of Child. of T.R.*, 750 N.W.2d 656, 660-61 (Minn. 2008) (quotation omitted). In reviewing the district court's factual findings, "we view the evidence in a light favorable to the findings." *In re Civ. Commitment of Kenney*, 963 N.W.2d 214, 221 (Minn. 2021) (addressing the clear-error standard of review); *see also In re Welfare of Child of J.H.*, 968 N.W.2d 593, 601 n.6 (Minn. App. 2021) (applying *Kenney* in a termination-of-parental-rights appeal), *rev. denied* (Minn. Dec. 6, 2021). But, in reviewing the district court's ultimate decision to terminate parental rights, "[w]e give considerable deference to the district court." *S.E.P.*, 744 N.W.2d at 385; *see also J.H.*, 968 N.W.2d at 600 (stating that we review district court's ultimate decision to terminate parental rights for an abuse of discretion). "We will affirm a termination order if at least one statutory ground for termination is supported by clear and convincing evidence and termination is in the best interests of the child, so long as the [county] made reasonable efforts to reunite the family if reasonable efforts were required." *In re Welfare of Child of F.F.N.M.*, 999 N.W.2d 525, 534 (Minn. App. 2023), *rev. denied* (Minn. Jan. 5, 2024).

Mother challenges the district court's determination on each of the statutory criteria for involuntary termination of parental rights: reasonable efforts by the county, the existence of at least one statutory ground for termination, and the child's best interests. We address her arguments on each criterion in turn.

## I. The district court did not abuse its discretion in determining that the county made reasonable efforts to rehabilitate mother and reunify mother with the child.

Before terminating parental rights, a district court must specifically find that the county has made reasonable efforts to rehabilitate the parent and reunify the family or find that reasonable efforts are not statutorily required. Minn. Stat. § 260C.301, subd. 8; *see also* Minn. Stat. § 260.012(a) (2024); *T.R.*, 750 N.W.2d at 664. Reasonable efforts are "services that go beyond mere matters of form so as to include real, genuine assistance." *In re Welfare of Child. of S.W.*, 727 N.W.2d 144, 150 (Minn. App. 2007) (quotation omitted), *rev. denied* (Minn. Mar. 28, 2007). The efforts "must be aimed at alleviating the conditions that gave rise to out-of-home placement, and they must conform to the problems presented." *In re Welfare of Child of J.K.T.*, 814 N.W.2d 76, 88 (Minn. App. 2012).

In determining whether a county's efforts were reasonable, the district court must consider whether the services offered were:

> (1) selected in collaboration with the child's family and, if appropriate, the child;
>
> (2) tailored to the individualized needs of the child and child's family;
>
> (3) relevant to the safety, protection, and well-being of the child;

7

(4) adequate to meet the individualized needs of the child and family;

(5) culturally appropriate;

(6) available and accessible;

(7) consistent and timely; and

(8) realistic under the circumstances.

Minn. Stat. § 260.012(h) (2024). The district court also weighs "the length of the time the county was involved and the quality of effort given." *In re Welfare of H.K.*, 455 N.W.2d 529, 532 (Minn. App. 1990), *rev. denied* (Minn. July 6, 1990). "[W]hat constitutes 'reasonable efforts' depends on the facts of each case." *J.H.*, 968 N.W.2d at 601 We review the district court's determination about the reasonableness of the county's efforts for an abuse of discretion and the related findings of fact for clear error. *In re Welfare of Child of D.L.D.*, 865 N.W.2d 315, 322-23 (Minn. App. 2015), *rev. denied* (Minn. July 20, 2015).

Here, the district court found that the county made reasonable efforts "that afforded [mother] with a meaningful opportunity" to correct the conditions that led to the child's out-of-home placement (chemical dependency and mental-health needs) and promote reunification with the child. The district court noted that many of the county's services were offered to mother when the first CHIPS proceeding began in 2021, and that the county maintained these services "despite lack of contact with [mother] and [mother's] failure to engage in services." The district court specifically found that the county provided the following services to mother after remand: (1) referrals for a chemical-dependency evaluation and offers to assist with scheduling, attendance, and transportation to

8

appointments; (2) referrals for UAs and sweat patch testing to demonstrate sobriety; (3) referrals for an updated psychological evaluation; (4) referrals for parenting-education services; (5) peer-support programming; (6) housing support; (7) outreach attempts to mother and meetings to discuss the case plan and mother's needs; (8) ongoing monitoring; (9) attempts to connect mother with the child's services providers; (10) monthly financial assistance for phone and transportation; and (11) provision of a cell phone to maintain contact with ongoing social workers and contact resources. The district court also found that

> [t]hese services have been selected in collaboration *with the family to the degree possible*, tailored to the individualized needs of the family, are relevant to the safety, protection and well-being of the child, adequate to meet the needs of the child and family, culturally appropriate, available and accessible, consistent and timely, and realistic under the circumstances.

(Emphasis added.)

Mother presents three arguments challenging the district court's determination that the county made reasonable efforts toward rehabilitation and reunification. We address each argument below. We conclude that the district court did not clearly err in its factual findings regarding the services made available to mother and we further conclude that the district court did not abuse its discretion when it determined that the county's efforts to rehabilitate mother and reunify the family were reasonable.

*Collaboration with the Family*

Mother first challenges the district court's finding that the services provided by the county were "selected in collaboration with the family to the degree possible." Mother

9

argues that this finding was clearly erroneous because the services were not selected in collaboration with the family. The county responds that the district court's finding is not clearly erroneous because the record reflects that the county tried to collaborate with mother, but she refused to provide input and denied that she had any need for services. The county also argues that mother's lack of communication does not equate to a failure to provide services in collaboration with the family. We agree with the county.

In a proceeding to terminate parental rights, the district court must make findings as to whether the county made reasonable efforts including consideration of whether the services provided by the county were "selected in collaboration with the child's family and, if appropriate, the child." Minn. Stat. § 260.012(h)(1). As noted above, the district court considered this factor and found that the county offered a number of services to mother and the child that were "selected in collaboration with the family to the degree possible." (Emphasis added.)

The record supports the district court's finding. For example, social worker P.B. testified that she called mother in February 2024, following remand, to talk about what services mother would need and her case plan. Mother responded by telling the social worker P.B. that she was not going to participate in her case plan and that she had no need for services. Social worker P.B. also testified that mother was difficult to reach. Likewise, other social workers who worked with mother after P.B. testified that they tried to reach mother at multiple different phone numbers, through text messages, and via email, but mother was often unresponsive. Mother also missed scheduled meetings to discuss the case plan with social workers in July, October, November, and December 2024. And

10

mother failed to appear at scheduled court hearings in May and September 2024, where the case plan was discussed. Given the record here, we conclude that the district court's finding that the county collaborated with mother "to the degree possible" in selecting services for mother is not clearly erroneous. *See J.H.*, 968 N.W.2d at 601.

To persuade us otherwise, mother identifies one instance in June 2024 when she requested a meeting with social worker P.B. and the social worker responded by texting mother some information instead of scheduling a meeting. However, the record also shows that soon after this request, a new social worker, K.S., was assigned to mother's case. In July 2024, K.S. contacted mother to set up a meeting to review the case plan and also sent mother another copy of the case plan. After multiple attempts to reach mother and set up a meeting time, social worker K.S. met with mother in October 2024. Overall, the record supports the district court's determination that the county repeatedly tried to coordinate services in collaboration with mother, but that mother was resistant to these efforts.

Accordingly, substantial evidence supports the district court's findings that the county collaborated with mother "to the degree possible" and gave her "a meaningful opportunity to address the issues" leading to the child's out-of-home placement. The district court's findings related to the county's attempts to select services in collaboration with the family are not clearly erroneous, and the district court did not abuse its discretion by determining that the county's actions were reasonable.

*Visitation with the Child*

Mother next argues that the district court erred when it found that the county's reunification efforts were reasonable because mother was not permitted to have visitation

11

with the child after the case was remanded. She claims that failure to allow contact between mother and the child "call[s] the adequacy of the efforts to reunify into question." The county responds that the district court's finding that the county made reasonable efforts at reunification is not clearly erroneous even in the absence of visitation. The county emphasizes that the limit on visitation was imposed by the district court—not the county—and persisted due to mother's actions and inability to demonstrate sobriety.

Generally, once a child is placed outside of the home and in foster care as part of a CHIPS proceeding, the district court must "review and either modify or approve the [county's] plan for supervised or unsupervised visitation." Minn. Stat. § 260C.201, subd. 5 (2024) (discussing visitation rights). But a district court may deny visitation if it finds that visitation "is not in the child's best interests." *Id.* The juvenile-protection statute defines "best interests" to include "all relevant factors to be considered and evaluated." Minn. Stat. § 260C.511(a) (2024).

Here, the record reflects that the district court held a hearing in April 2024 following remand to discuss the reopened CHIPS matter. At the hearing, the parties addressed the question of visitation, which had been suspended in 2023 due to concerns about the child's well-being. Mother requested that visitation with the child begin soon. The GAL objected to the request and opposed any visits until mother demonstrated sobriety. The county also objected to visitation at that time. The district court denied mother's request for visitation and ordered mother "to demonstrate sobriety, work towards completing her various assessments, and begin working her case plan before her visits could commence." The parties revisited the question of visitation at a hearing in November 2024. The district

court again denied mother's visitation request. The district court also ordered that the question of visitation be revisited if mother demonstrated sobriety and upon approval of the child's therapist.

Because mother did not meet the conditions of visitation set forth in the district court's orders, mother did not have visitation with the child following remand. In its termination order, the district court addressed the issue of visitation and found that "mother did not substantially engage in her case plan to progress to a point where she could participate in visitation with her child."

On appeal, mother acknowledges that Minnesota courts "have not adopted a bright line rule regarding the provision of visitation prior to termination of parental rights." Nevertheless, mother argues that it is "problematic" to withhold visitation from a parent in light of legislative intent and Minnesota caselaw.

In support of her argument, she cites to *In re Welfare of M.A.*, 408 N.W.2d 227 (Minn. App. 1987), *rev. denied* (Minn. Sept. 18, 1987). In that case, the county—not the district court—suspended mother's visitation rights based on the children's psychologist's report stating that the children had a negative reaction to mother during visits. *Id.* at 230. On appeal from the termination of mother's parental rights, we reviewed whether the district court's determination that reasonable efforts by the county failed to correct the conditions leading to the petition. *Id.* at 235. We stated that "[r]easonable reuniting efforts were badly crippled by the [county's] decision to proceed without visitation" between mother and the children. *Id.* at 236. We noted that there was only a "single comprehensive evaluation of the mother's needs and abilities," which cast doubt on whether the county's

efforts went "beyond mere matters of form . . . to include real, genuine help." *Id.* (quotation omitted). Despite these concerns, we affirmed the district court order terminating mother's parental rights based on mother's unfitness. *Id.* at 232-33.

Here, unlike in *M.A.*, the county made genuine efforts to reunify mother with the child, including offering her services to help achieve sobriety. And here, it was the district court—not the county—that withheld visitation until mother could maintain sobriety and the child's therapist approved of visitation. The district court's decision to delay visitation was based on the child's best interests, following multiple efforts by county social workers to assist mother in becoming sober, address her mental-health needs, and develop parenting skills. The record further demonstrates that the county's efforts went "beyond mere matters of form so as to include real, genuine assistance." *S.W.*, 727 N.W.2d at 150 (quotation omitted). For these reasons, *M.A.* is distinguishable.

We therefore conclude that the district court did not clearly err in finding that the county put forth reasonable rehabilitation and reunification efforts, notwithstanding the lack of visitation between mother and the child.

*Problem Presented*

Mother also challenges the district court's finding that the county made reasonable efforts to rehabilitate mother and reunify the family by arguing that the county's efforts were not tailored to address her specific needs in relation to the child's medical care and educational needs. In response, the county argues that mother had multiple opportunities to participate in the child's medical appointments and services but repeatedly failed to engage with the child's needs.

Whether the county provided reasonable efforts requires a context-specific analysis that "depends on the problem presented." *See In re Welfare of S.Z.*, 547 N.W.2d 886, 892 (Minn. 1996). Here, the district court found that the county provided reasonable efforts to support mother and reunite the family, specifically finding that the efforts were "tailored to the individualized needs of the family" and were "adequate to meet the needs of the child and family." The record provides ample support for these findings. For example, in February 2024, a social worker told mother that her authorization was needed for an updated educational assessment for child, but mother did not provide timely authorization for this assessment. Mother likewise failed to provide authorization for the child to engage in psychological testing in March 2024. At trial, mother denied that the child had a disability or needed resources. She testified that she did not want to authorize certain services because she did not want the child to be "labeled as needing services" if they were not required. Given this record, we agree with the district court that the county made reasonable efforts to address the problem presented in terms of engaging mother in the child's medical care and educational needs. *See id.*

In arguing otherwise, mother identifies two cases to support her assertion that the county failed to provide adequate efforts to assist her in relation to the child's medical and educational needs. Neither case alters our conclusion. Mother first points to *In re Welfare of K.P.C.*, in which we determined that parental rights cannot be terminated solely based on a parent's financial condition. 366 N.W.2d 711, 714 (Minn. App. 1985) (stating that "mere poverty" is "seldom, if ever," a sufficient ground for termination (quotations omitted)). But, because mother does not contend that her parental rights were terminated

15

based on her financial situation, this case does not assist our analysis. Mother also relies on a nonprecedential decision, *In re Welfare of Child of E.C.S.*, in which we concluded that termination was inappropriate because the parent substantially completed more than 20 requirements in the case plan, including maintaining sobriety. No. A18-2106, 2019 WL 2262324, at *5, 8 (Minn. App. May 28, 2019). Here, mother does not contend that she substantially complied with the majority of her case plan, as in *E.C.S.* Nor does she contend that she has maintained sobriety. This case is also unpersuasive.

In sum, substantial evidence supports the district court's findings that the county provided reasonable efforts to rehabilitate mother and reunify the family, and those findings are not clearly erroneous. The caselaw relied on by mother to argue otherwise is inapposite. The district court did not abuse its discretion when it determined that the county's efforts were reasonable.

## II. Clear and convincing evidence supports at least one of the statutory grounds relied on by the district court to terminate mother's parental rights.

Mother also argues that we should reverse the district court's decision terminating her parental rights because none of the four statutory grounds found by the district court are supported by the record. We disagree.

To terminate parental rights, at least one statutory ground to involuntarily terminate parental rights must be present. Minn. Stat. § 260C.301, subd. 1(b) (listing statutory bases to involuntarily terminate parental rights). When reviewing a district court's determination that the county has established one or more statutory grounds, appellate courts "review the district court's findings of the underlying or basic facts for clear error, but we review its

16

determination of whether a particular statutory basis for involuntarily terminating parental rights is present for an abuse of discretion." *In re Welfare of Child. of J.R.B.*, 805 N.W.2d 895, 901 (Minn. App. 2011), *rev. denied* (Minn. Jan. 6, 2012). If the child to whom parental rights may be terminated is not an Indian child, a district court must find the relevant facts by clear and convincing evidence. Minn. R. Juv. Prot. P. 58.03, subd.2(a). If an appellate court affirms the district court's decision that one statutory ground to involuntarily terminate parental rights is present, we need not address whether the other statutory grounds are supported by the record. *See J.K.T.*, 814 N.W.2d at 92 (recognizing that appellate courts "need only one properly supported statutory ground in order to affirm a termination order").

Here, the district court determined that the county proved by clear and convincing evidence that four separate statutory grounds supported termination of mother's parental rights. Those statutory grounds were: (1) mother substantially, continuously, or repeatedly failed to comply with the duties imposed upon her by the parent and child relationship; (2) mother was palpably unfit to parent; (3) despite the county's reasonable efforts, mother failed to correct the conditions leading to the child's out-of-home placement; and (4) the child was neglected and in foster care. *See* Minn. Stat. § 260C.301, subd. 1(b)(2), (3), (4), (7).

We limit our analysis to the third statutory ground found by the district court because the record reflects that there is clear and convincing evidence to support termination on that statutory ground. *See id.*, subd. 1(b)(4). Because at least one of the statutory grounds

found by the district court is supported by the record, we need not address the remaining statutory grounds for termination. *See J.K.T.*, 814 N.W.2d at 92.

Under section 260C.301, subdivision 1(b)(4), a district court may terminate a parent's rights if "following the child's placement out of the home, reasonable efforts, under the direction of the court, have failed to correct the conditions leading to the child's placement." Minn. Stat. § 260C.301, subd. 1(b)(4). It is presumed that reasonable efforts have failed upon a showing that: (1) a child under the age of eight "has resided out of the parental home under court order for six months unless the parent has maintained regular contact with the child and the parent is complying with the out-of-home placement plan"; (2) "the court has approved the out-of-home placement plan"; (3) the "conditions leading to the out-of-home placement have not been corrected," which is presumed when the parent has "not substantially complied with the court's orders and a reasonable case plan"; and (4) "reasonable efforts have been made by the [county] to rehabilitate the parent and reunite the family." *Id.*, subd. 1(b)(4)(i)-(iv).

Here, the district court found that each of these four factors were satisfied because: (1) the child was in out-of-home placement for 391 days after remand, and 1,168 days in total; (2) the district court approved a case plan following remand; (3) mother failed to correct the conditions identified in the case plan—namely, chemical dependency and mental-health needs—that led to the out-of-home placement; and (4) the county made reasonable efforts to rehabilitate mother and reunite the family, which included "several methods to induce and encourage case plan involvement" but "[n]one of these methods have brought any success, growth, or compliance."

Mother challenges only the district court's findings on the fourth factor—the county made reasonable efforts to rehabilitate mother and reunite the family. She does not challenge the other three factors. Here again, mother focuses on the lack of visitation with child, arguing that "withholding visitation from mother rendered the efforts to reunify the family unreasonable."

For the reasons discussed in the previous section, we conclude that the district court's finding that the county made reasonable efforts is supported by substantial evidence and is not clearly erroneous. And we further conclude that the district court did not abuse its discretion in determining that a statutory basis for involuntarily terminating mother's parental rights was present. As we explained above, it was the district court—not the county—that restricted visitation based on the child's best interests until after mother demonstrated sobriety and the child's therapist approved. The record reflects that neither condition was met. We therefore reject mother's contention that the lack of visitation with the child after remand provides a basis for concluding that the district court abused its discretion when it found that clear and convincing evidence supports termination because reasonable efforts by the county failed to correct the conditions leading to the child's out-of-home placement.

To convince us otherwise, mother relies on three cases: *In re Child of E.V.*, 634 N.W.2d 443 (Minn. App. 2001), *In re Forrest*, 246 N.W.2d 854 (Minn. 1976), and *M.A.*, 408 N.W.2d at 227. None of these cases compel reversal.

In *E.V.*, mother challenged the termination of her parental rights. 634 N.W.2d at 445. We reversed and remanded, determining that the district court's findings were

"conclusory" and did not properly address whether mother corrected the conditions that led to out-of-home placement. *Id.* at 447-49. We cautioned that "[t]he grave danger in these incomplete and conclusory findings is that the [district] court will find merely 'no compliance with the case-plan' without finding that these failures demonstrate cause for terminating parental rights." *Id.* at 448-49. Here, mother argues that the child was removed from her care after the CHIPS proceeding because of her failure to demonstrate sobriety, but that the termination decision was based on her "lack of [a] relationship with the child" resulting from lack of visitation. This argument is not consistent with the district court's order. In its thorough, detailed order, the district court found that termination was appropriate under subdivision 1(b)(4) because mother failed to correct the conditions requiring out-of-home placement—her chemical dependency and mental-health needs— even with reasonable efforts by the county. Contrary to mother's suggestion, the district court did not base its decision under subdivision 1(b)(4) on mother's lack of a relationship with the child. And because the district court made detailed findings here—unlike the "conclusory" findings in *E.V.*—this case does not support reversal.

Mother also relies on *Forrest*. 246 N.W.2d at 854, 857. In *Forrest*, the county appealed the district court's decision denying the termination of father's parental rights on the basis that reasonable efforts had failed to correct the conditions leading to out-of-home placement. *Id.* The district court declined to terminate father's parental rights because father had demonstrated sobriety and thereby corrected the condition that led to the placement. *Id.* But the district court ruled that father was not prepared to assume custody of the child, and expressed doubts about whether father would ever be in a position to

20

assume care and custody of his child because of father's "age and past history." *Id.* The supreme court concluded that the district court's findings were unclear on whether father would be able to care for his child within the foreseeable future based, in part, on the lack of visitation between parent and child. *Id.* For that reason, the case was remanded for explicit findings on that question. *Id.*

Mother seems to argue that *Forrest* instructs that a district court cannot terminate parental rights without giving the parent an opportunity to interact with the child after an out-of-home placement. Mother's reliance on *Forrest* is misguided for two reasons. First, in *Forrest*, the district court's findings were "unclear" on whether father would be able to provide proper care for the child and become a suitable parent in the foreseeable future. *Id.* Here, by contrast, the district court specifically found that "mother is not capable of caring for [the child] in the reasonably foreseeable future and if the child were returned to her, [the child] would be placed at risk of instability, harm, and neglect." Mother does not challenge this finding. Second, and equally as important, mother did not correct the conditions that led to the out-of-home placement whereas, in *Forrest*, the parent did. Therefore, *Forrest* does not support reversal of the district court's determination under subdivision 1(b)(4).

Finally, mother relies on *M.A.* 408 N.W.2d at 227. Mother argues that, under *M.A.*, withholding visitation renders a county's efforts to reunify the family unreasonable. As discussed above, *M.A.* is distinguishable because the county—not the district court—suspended the parent's visitation rights in that case. *Id.* at 230. Further, the county in this case made real, genuine efforts to rehabilitate mother and reunify her with the child, further

21

distinguishing mother's circumstances from *M.A. Id.* at 236 (determining that the county failed to provide relevant services to support reunification between mother and one child, but affirming overall decision to terminate parental rights on the basis of mother's unfitness). For these reasons, *M.A.* is not persuasive.

In sum, we conclude that mother has not demonstrated that the district court clearly erred in finding that the county proved by clear and convincing evidence that mother failed to correct the conditions that led to the child's out-of-home placement following reasonable efforts by the county as required by section 260C.301, subdivision 1(b)(4). We further conclude that the district court did not abuse its discretion in determining that termination of mother's parental rights is supported by at least one statutory basis.

### III. The district court did not abuse its discretion by determining that termination was in the child's best interests.

Even if a statutory basis for termination is present and the county has made reasonable efforts, the child's best interests are the "paramount consideration" in a termination proceeding. Minn. Stat. § 260C.301, subd. 7; *see also* Minn. Stat. § 260C.001, subd. 2(a) (2024) ("The paramount consideration in all juvenile protection proceedings is the health, safety, and best interests of the child."). A district court may not terminate parental rights if termination is not in the best interests of the child. *See In re Welfare of the Child of D.L.D.*, 771 N.W.2d 538, 545 (Minn. App. 2009) ("Considering a child's best interests is particularly important in a TPR proceeding because a child's best interests may preclude terminating parental rights even when a statutory basis for termination exists." (quotation omitted)). In considering the child's best interests, the district court must

analyze three factors: (1) "the child's interest in preserving the parent-child relationship"; (2) "the parent's interests in preserving the parent-child relationship; and" (3) "any competing interests of the child." Minn. R. Juv. Prot. P. 58.04(c)(2)(ii); *see also J.R.B.*, 805 N.W.2d at 905 ("Competing interests [of the child] include such things as a stable environment, health considerations and the child's preferences." (quotation omitted)). We review a district court's best-interests determination for an abuse of discretion. *J.R.B.*, 805 N.W.2d at 905.

The district court made findings of fact on the best interests factors that are supported by clear and convincing evidence, and that those factors show that termination was in the best interests of the child. In considering the relevant factors, the district court found that the child "spent a substantial amount of her life" out of mother's care, has "built a strong bond" with her foster parents, "and has made noticeable gains and changes during her time out of [mother's] care." It also found that mother failed to address her mental health and continued to prioritize her own needs over the needs of the child. The district court credited the testimony from the social workers and the GAL that termination was in the child's best interests because mother could not prioritize the needs of the child, which would negatively impact the child's development. Finally, the district court found that "the [c]hild's unique needs require and deserve vigilance, consistency, commitment, and a child-centric approach"; qualities that mother has not been able to demonstrate and would not be able to demonstrate in the foreseeable future. The district court acknowledged that the child had "an interest in maintaining a relationship with her biological parent." And it credited mother's testimony that she "continues to care deeply for her [c]hild." On balance,

23

however, the district court determined that the child's needs and interests outweighed mother's desire for reunification.

To convince us that the district court abused its discretion in its analysis of the child's best interests, mother contends that the district court could not adequately evaluate the child's best interests because mother did not have visitation with the child after the case was remanded. Mother argues that without visitation, "there was no evidence for the [district] court to base its best interests determination related to the child's interest in maintaining the parent-child relationship." Mother also asserts that foster mother "has a stake in the outcome," and that the child "is too young to express a preference." We are not persuaded that these arguments entitle mother to relief. On the contrary, the trial testimony supports the district court's findings on the best-interests factors. And on review, an appellate court will not reweigh the evidence or substitute our judgment for that of the district court. *Sefkow v. Sefkow*, 427 N.W.2d 203, 210 (Minn. 1988); *see also Vangsness v. Vangsness*, 607 N.W.2d 468, 477 (Minn. App. 2000) (noting that in the context of child-custody matters, the law "leaves scant if any room for an appellate court to question the [district] court's balancing of best-interests considerations"). Therefore, because the record supports the district court's findings on the best interests factors, and because the district court's balancing of its findings on those factors carefully weighed the competing interests of the child and mother in making its best-interests findings, we discern no abuse of discretion in its determination that the child's best interests favors termination.

Appellant has not shown that the district court abused its discretion in any of its rulings on the prerequisites for involuntarily terminating her parental rights—reasonable

efforts to reunite the family, the existence of a statutory basis to terminate parental rights, best interests of the child. Accordingly, we conclude that the district court did not abuse its discretion by terminating mother's parental rights to the child, and we affirm.[1]

**Affirmed.**

---

[1] Mother also asserts that the district court made a number of erroneous factual findings and credibility determinations. The existence of evidence that could support alternative findings does not compel reversal, *Vangsness*, 607 N.W.2d at 474, and there is evidence in the record supporting the district court's factual findings and credibility determinations. We therefore reject these assertions of error.